In the Matter of the Transfer Tax upon the Estate of JOHN KANE, Deceased.

SECURITY TRUST COMPANY OF ROCHESTER, as Administrator with the Will Annexed, et al., Appellants; STATE TAX COMMISSION, Respondent.

**Tax — transfer tax — stock transferred by husband to himself and wife — subsequent promise by wife to leave half to children of husband not binding — on death of husband right of ownership as survivor accrued to wife to all shares standing in their joint names not disposed of by husband during life — transfer tax properly assessed upon all stock transferred to them jointly after May 20, 1915 — waiver of defect in notice of appeal from pro forma order of surrogate fixing tax.**

1. Where transfer by a husband of corporate stock to the joint names of himself and his wife was made without conditions, a subsequent promise by the wife that if she was the survivor she would give half of the shares upon her death to children of her husband by an earlier marriage was merely a statement of an intention then existing.

2. Where in the year 1908 a husband received certain shares of corporate stock in payment of his interest in a partnership and caused a portion thereof to be issued in his own name and a portion in the joint names of himself and his wife, thereafter in 1920 additional shares were issued to himself and his wife, and, finally, in 1923 he surrendered all the certificates of stock, individual and joint, and caused a new certificate to be issued in the names of himself and his wife, at the same time telling her, in effect, that he had put the shares in their joint names to the end that at his death they might pass to her as his survivor without will or other formalities, on the death of the husband there accrued to the wife a right of ownership as survivor in all the shares then standing in the joint names, unless otherwise disposed of by the husband during life.

3. A transfer tax was, therefore, properly assessed, under subdivision 7 of section 220 of the Tax Law, as to the shares formerly in the name of the husband individually and as to those issued in 1920 to the husband and wife jointly, but the shares issued in 1908, in the joint names of the husband and wife, are taxable only to the extent of one-half thereof. The statute is inapplicable to joint tenancies created before May 20, 1915, and the presumption is that the husband caused the shares, paid for by himself, to be issued in the names of himself and wife with the intention that upon his death the title thereto if still in their joint names should pass to the survivor. No other or greater title was established when the new certificate was issued in 1923.

4. Where the surrogate as taxing officer made a *pro forma* order fixing the tax and the executor, within the time limited, filed a notice of appeal but failed to state the grounds upon which the appeal was taken, as required by section 232 of the Tax Law, and the Tax Commission did not return the notice or move to dismiss the appeal but appeared before the surrogate and, without objection to the form of the notice of appeal, joined with the executor in preparing and submitting an agreed statement of the evidence, at a time when a new or amended notice of appeal would still have been timely, the effect was a waiver by the Commission of any objection to the notice and the surrogate was at liberty to treat it as amended and proceed to a decision on the merits.

*Matter of Kane*, 218 App. Div. 278, reversed.

(Argued November 22, 1927; decided December 6, 1927.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered

November 9, 1926, which modified and affirmed as modified an order of the Monroe County Surrogate's Court assessing a transfer tax upon the estate of John Kane, deceased.

*Glenn L. Buck* for appellants. John and Zetta Kane were tenants in common and not joint tenants of all stock of the American Laundry Machinery Company. (*Matter of Blumenthal,* 236 N. Y. 448; *Matter of Kimberly,* 150 N. Y. 90; *Wetherow* v. *Lord,* 41 App. Div. 413; *Matter of Fonda,* 206 App. Div. 61; *Hayes* v. *Claessens,* 189 App. Div. 449.) A transfer tax cannot be assessed on personal property standing in the names of two or more persons unless there is a right of survivorship. (*Matter of Blumenthal,* 236 N. Y. 448.) There is no theory upon which the one hundred and fifty shares standing in the names of both prior to 1915 can be taxed, either in whole or in part. (*Matter of Cossitt,* 204 App. Div. 545; 236 N. Y. 524.)

*Seth T. Cole* and *Milton E. Gibbs* for respondent. Because the notice of appeal to the surrogate from the *pro forma* taxing order specified no grounds of appeal, this court has no jurisdiction. (*Matter of Davis,* 149 N. Y. 539; *Matter of Kennedy,* 93 App. Div. 27; *Matter of Wormser,* 51 App. Div. 441; *Matter of Manning,* 169 N. Y. 449; *Matter of Westurn,* 152 N. Y. 93; *Lavelle* v. *Skelly,* 90 N. Y. 546; *Waldo* v. *Schmidt,* 200 N. Y. 199; *Avery* v. *Woodbeck,* 62 Barb. 557; *Piper* v. *Van Buren,* 27 Hun, 384; *Matter of Stone,* 56 Misc. Rep. 247; *Stevens* v. *Stevens,* 52 Atl. Rep. 1020; *Deuch* v. *Seaside Lodge,* 26 Ore. 385.) A transfer of all of the stock of the American Laundry Machinery Company was made to Zetta Kane pursuant to the agreement between her and John Kane in January, 1923, and such transfer is taxable under subdivision 7 of section 220 of the Tax Law. (*Matter of Cossitt,* 204 App. Div. 545; 236 N. Y. 524.)

CARDOZO, Ch. J.  John Kane was a partner in the firm of A. M. Hagen & Company, engaged in the manufacture of laundry machinery at Rochester.  In February, 1908, the firm sold out to a New Jersey corporation, American Laundry Machinery Company.  For his share of the partnership assets, Kane received 775 shares of common stock, of which 625 were issued in his own name and 150 in the joint names of John Kane and Zetta Kane, his wife.  The shares were exchanged in 1909 for a like number of shares in a corporation of the same name organized in Ohio.

From then till 1920 the stock ownership remained the same.  In that year 75 additional shares were issued to John and Zetta Kane.  Eighteen shares of preferred stock were acquired in the same form.  In December, 1922, the par value of the common shares was changed from $100 to $25 per share, and in January, 1923, a stock dividend upon the common shares was declared at the rate of 50% per share.  By force of these changes the equivalent of the 625 shares then held in the name of John Kane became 3,750 shares, the equivalent of the 150 shares then held in the joint names became 900, and the equivalent of the 75 shares became 450, a total of 5,100 shares.  John Kane thereupon in January, 1923, surrendered all the outstanding certificates of common stock, individual and joint, and caused a new certificate to be issued in the names of himself and Zetta Kane in exchange for the certificates surrendered.  He reported to his wife the change thus made.  He told her in effect that he had put the shares in the joint names to the end that upon his death they might pass to her as his survivor without will or other formalities.  There is evidence that she expressed her approval of the arrangement and her understanding of the fact that if she did not survive him, the shares would belong to him alone.  There is evidence also of a promise on her part that if she happened to be the survivor, she would give half of the shares

upon her death to the children of John Kane by an earlier marriage. If this promise was made, it was merely a voluntary statement of an intention then existing. The transfer to the joint names had already been made. It was made without conditions. No promise limiting the wife's dominion in the event of her survivorship was exacted in return.

John Kane, the husband, died in 1924, leaving a will by which he gave his property to his wife for life, with remainder to his children. The wife, Zetta Kane, surviving him, died in 1925. The question to be determined in this proceeding to fix the transfer tax upon the estate of the husband, is whether husband and wife held the shares of stock as tenants in common on the one hand, or as joint tenants, or with a right of survivorship analogous to that of joint tenants, on the other. If the title was of the latter order, there is a subsidiary question as to the date of its creation.

Section 220, subdivision 7, of the Tax Law as it existed at the death of John Kane provided as follows:

" Whenever property is held in the joint names of two or more persons, or as tenants by the entirety, or is deposited in banks or other institutions or depositaries in the joint names of two or more persons and payable to either or the survivor, upon the death of one of such persons the right of the surviving tenant by the entirety, joint tenant or joint tenants, person or persons, to the immediate ownership or possession and enjoyment of such property shall be deemed a transfer taxable under the provisions of this chapter in the same manner as though the whole property to which such transfer relates belonged absolutely to the deceased tenant by the entirety, joint tenant or joint depositor and had been bequeathed to the surviving tenant by the entirety, joint tenant or joint tenants, person or persons, by such deceased tenant by the entirety, joint tenant or joint depositor by will; except that in the case of tenancies by the entirety the

surviving tenant shall be taxable only on one-half of the value of the property so transferred."

We see no escape from the conclusion that in January, 1923, if not before, there accrued to Zetta Kane, in the event of her survivorship, a right of succession to all the shares of stock then standing in the joint names, unless otherwise disposed of by the husband during life. We shall consider in a moment to what extent title by survivorship might be established by force of a presumption from the form of the certificates. At this point it is enough to say that without recourse to presumption, the existence of such a title in January, 1923, is made out, at least for the future, by declarations of intention. The wife took the whole upon the death of the husband with the shares still in the joint names.

The question is yet to be answered whether the right of survivorship, confirmed in 1923, had any earlier existence. We have held that section 220, subdivision 7, of the Tax Law is inapplicable to joint tenancies or analogous rights existing before May 20, 1915, the date of its enactment (*Matter of McKelway*, 221 N. Y. 15; *Matter of Dolbeer*, 226 N. Y. 623; *Matter of Cossitt*, 204 App. Div. 545; 236 N. Y. 524). We must, therefore, inquire whether at that date some of the 5,100 shares, subject to the right of survivorship since January, 1923, were already held by a like tenure. As to the 3,750 shares in the name of John Kane individually, there is no room for debate. The right of survivorship came into being as to these when the joint certificate was issued in 1923. As to the 450 shares acquired in the joint names in 1920, there is again no room for debate. Even though the title as to these was joint from the beginning, it was a title acquired after May 20, 1915, and hence subject to the statute (*Matter of Cossitt, supra*). Different considerations apply, however, to the remaining 900 shares, the equivalent of the 150 shares issued to husband and wife jointly in 1908. Payment for these

shares was made solely by the husband. They were part of a total of 775 shares issued in return for his interest in the assets of a partnership. He caused a part of this total, *i. e.*, 625 shares, to be made out in his own name. He caused 150 shares to be issued in the names of John and Zetta Kane. The presumption is that he did this with the intention that upon his death, the title to the shares, if still in the joint names, should pass to the survivor (*West* v. *McCullough*, 123 App. Div. 846; 194 N. Y. 518; *Matter of Kaupper*, 141 App. Div. 54, 57; 201 N. Y. 534; *Sandford* v. *Sandford*, 45 N. Y. 723). The presumption would not exist in the absence of the relation of husband and wife. It would not exist even then in the absence of evidence that the shares had been paid for by the husband solely (*Matter of Blumenthal*, 236 N. Y. 448). None of the required conditions is lacking in the case before us. The certificate for 150 shares (now 900) must be held to have been taken out with the intention that the wife should succeed to a title by survivorship.

We think as to these shares that no other or greater title was established when the new certificate was issued in 1923. The cases hold, it is true, that a husband who puts the title to a chose in action in the name of himself and his wife jointly does not create a joint tenancy in the strict sense. The right of survivorship attaches if title is retained till his death, but he may defeat it altogether if he disposes of the property by conveyance taking effect during his life (*Matter of Albrecht*, 136 N. Y. 91, 95; *Wetherow* v. *Lord*, 41 App. Div. 413, 417). We think this husband had no thought in January, 1923, to diminish his own rights in that regard or to add anything in that regard to the rights belonging to his wife. What he said to her was nothing more than a statement, put in a layman's loose way, of the intention inferred by law from the form of the investment. The surrogate, the trier of the facts, held the intention as stated to be merely

the equivalent of the intention as presumed.  We reach the same conclusion.  The certificates standing up to that time in the name of the husband were consolidated with those standing in the names of both.  No other change was wrought, and no other was intended.

A point is made that by reason of a defect of practice there is nothing here to be reviewed.  The surrogate as taxing officer made a *pro forma* order fixing the tax at $8,622.78, a figure reached by including the full 5,100 shares as subject to assessment.  The executor, if dissatisfied with the *pro forma* order, should have filed with the surrogate within sixty days a notice of appeal stating the grounds upon which the appeal was taken (Tax Law, § 232).  A notice of appeal was filed within the prescribed time, but without a statement of the grounds.  The Tax Commission did not return this notice, nor move to dismiss the appeal.  Instead of doing either of these things, it appeared before the surrogate, and without objection to the form of the notice of appeal, joined with the executor in preparing and submitting an agreed statement of the evidence as to the merits of the controversy.  At that time a new or amended notice of appeal would still have been timely.  We think the composite effect of all these acts and omissions was a waiver by the Commission of any objection to the notice.  We think also that since objection, if timely, might have been followed by amendment, the surrogate was at liberty to treat the notice as amended, and that since it was so treated by him, it will be so treated on appeal by us (cf. Civ. Prac. Act, § 107; Surrogate's Court Act, § 297).  A different question would be here if the surrogate had declined to act upon the notice, or even, it may be, if the time had gone by, at the date of the hearing upon the merits, when a new notice would be possible (cf. *Matter of Davis*, 149 N. Y. 539; *Matter of Manning*, 169 N. Y. 449).  The latter situation must be left to be dealt with when it arises.  So far as the record shows,

objection to the form of the notice was not made by
the Tax Commission at any time or in any form.   Counsel
stated on the argument that it was made in a brief sub-
mitted to the surrogate after the hearing had been closed.
If this be so, there is no suggestion that it was brought
to the notice of the executor.   We think the surrogate
did not err in such a situation when he disregarded the
defect.   He proceeded to a decision of the merits, and
by order made September 22, 1925, modified his *pro
forma* order by holding that the 150 shares, and the
substitutes therefor, were taxable only to the extent of
one-half thereof, since the right of survivorship as to
them had come into existence before the adoption of
the statute.

The Appellate Division, though concurring with the
surrogate in his holding that the merits of the assessment
were properly before him, held that the *pro forma* order
was correct, and the modification erroneous.   It, there-
fore, modified the latter order to conform to the order
as first made.   For the reasons already stated, we are
in agreement with the surrogate.

The order of the Appellate Division in so far as it
modifies the order of the Surrogate's Court of Monroe
county, dated September 22, 1925, should be reversed
and the last-mentioned order affirmed, without costs.

POUND, CRANE, ANDREWS, LEHMAN, KELLOGG and
O'BRIEN, JJ., concur.

Ordered accordingly.