ANNA E. BELFANC, Respondent, *v.* AUGUSTUS BELFANC, Appellant.

Third Department, November 17, 1937.

454

*Charles E. Hardies,* for the appellant.

*Floyd J. Reinhart* [*Harry V. Borst* of counsel], for the respondent.

McNAMEE, J.   The parties are husband and wife.   The plaintiff wife seeks an adjudication that she is the owner of a half interest in a bond and mortgage standing in their joint names, and a judgment for half the proceeds thus far collected.   The defendant denies that the wife has any interest in the bond and mortgage, except the right of survivorship.

After hearing all of the evidence, the trial court found that the parties were tenants in common, and that each was presently entitled to half of the proceeds, and directed judgment accordingly. It is this finding that makes the question for review.

The facts that must determine the case are not in dispute.   They appear by the uncontradicted evidence of both parties, and the attorney who drew the papers.   The defendant husband became the owner in 1915 of a parcel of land in Amsterdam, N. Y., and they intermarried in 1921.   Later the husband built a house on the land, at his sole expense; and in 1924 these parties joined in a deed thereof to one Kaufman and his wife, who gave back a bond for part of the consideration, and a purchase-money mortgage to secure its payment.   The bond and mortgage were made payable to the parties hereto jointly, the mortgage denominating them " husband and wife."   At the time of the sale to the Kaufmans, the defendant husband was the sole owner of the premises.   The wife made no contribution to the cost of the real estate, or of the mortgage.

The husband testified that he told the scrivener in the presence of his wife to put her name in the bond and mortgage, so that it would go to her if he died, and that during his life he was to have the principal and interest.   His testimony runs: " I told Mr. Knight

that I wanted to put my wife's name on the mortgage in case I died, so she would have it. Q. And she was there and heard you say that? A. She was. * * * Q. And that was accomplished, was it? A. Yes, sir." And when further interrogated it appears in reference to the conversation: " The Court to witness: * * * Q. What was said? A. I was to have the principal and interest unless I died, * * * and if I should happen to drop away it was supposed to come to her. That is the reason I turned it over." The lawyer stated in his testimony that he told the parties " that it would be a good idea to put her name in, so if anything happened to him, if he should die, that mortgage would belong to her."

None of the facts testified to by the defendant or by Mr. Knight was contradicted by the plaintiff. On the contrary, she admitted her presence at the conversation detailed, that she put no money in the investment, and that " He said that my name should go in the mortgage, * * * so if anything should happen to him I would have it." In addition, she testified that she frequently received payments of interest and indorsed them on the bond, and always delivered the money to her husband; that she never devoted any of the money to her personal use; and that she had no property, and that her sole duties were to keep the home and care for the children. The wife further stated in her testimony that the money from the bond and mortgage was to be employed by her husband in his business, and to pay taxes, and for general use. She claimed no interest in her husband's business, and had no taxes to pay.

It may aid clarity to observe that a mortgage is personal property, and that the mortgagors are in no way concerned with the interests of the mortgagees as between themselves. The respective interests of multiple owners of securities are commonly not declared in the instrument, as between themselves. On their face, and in so far as the obligor is concerned, they are generally to be regarded as joint owners, and presumed to have equal interests, in the absence of proof to the contrary. But in a well-defined class of cases, however, a different result arises when the obligees are husband and wife. The instruments in question here do not by their terms declare the interests of the mortgagees, and these must be determined from presumption or proof, or both. And evidence bearing on that question does not vary or contradict the writing, but supplements and completes the instrument with reference to rights on which it is silent, as is illustrated by practically all of the cases about to be mentioned.

An examination of a long line of pertinent cases makes possible the statement of a reasonably accurate rule that comprehends the case under review. A chose in action, whether a bank account, a bond and mortgage, a note, or other investment in personalty, taken in the joint names of husband and wife upon the direction of the husband, confers upon the wife the right to succeed by survivorship, when the security arises from the husband's sole money or property, in the absence of proof of a different intent declared at the time of execution. From such a transaction it is presumed that the husband intended to benefit his wife with the ownership of the property upon his death — as it were, by way of gift *causa mortis*, subject only to the possible rights of creditors. And during his life the husband retains his complete ownership, control and right of disposition, and the wife has no interest therein enforcible against him. (*Sanford* v. *Sanford*, 45 N. Y. 723, 726; *Matter of Albrecht*, 136 id. 91, 95; *West* v. *McCullough*, 123 App. Div. 846; affd., 194 N. Y. 518; *Matter of Kaupper*, 141 App. Div. 54; affd., 201 N. Y. 534; *Matter of Blumenthal*, 236 id. 448; *Matter of Kane*, 246 id. 498, 504; *Wetherow* v. *Lord*, 41 App. Div. 413, 417, 418; *Matter of Niles*, 142 id. 198, 200; *Matter of Kennedy*, 186 id. 188; *Matter of Larmon*, 212 id. 273.)

It has been said plausibly that this rule has its roots in the common law as it existed before the coming of the Married Women's Acts. Then the husband was not free to transfer his personal property to his wife and still retain possession, because his possession of her personalty excluded her from ownership. And thus sprung up the device of taking choses in action in the joint names, without delivery to her, and so insuring to her title by survivorship upon his death. This device was not affected by the Married Women's Acts, and its use has been recognized as within the settled law until the present time. (*McCullough* case, *supra*, p. 848, and cases above.)

A different rule prevails, however, when it appears from the evidence that the investment arose from joint contributions of husband and wife, or when the source or ownership of the funds is not known. Then the husband and wife take as tenants in common under the statute. (Real Prop. Law, § 66, and cases above cited.) And contrariwise, neither the presumption nor the statute will control when the evidence establishes a variant intention of the parties to take and hold the property otherwise. (*Matter of Kaupper*, 141 App. Div. 54; affd., 201 N. Y. 534.) Judge CRANE, speaking for the Court of Appeals, has said that " the intention of the husband is the thing to be looked for." (*Blumenthal* case, *supra*, p. 452.)

The statute mentioned provides only that the persons taking the estate shall hold as tenants in common unless it be expressly declared to be in joint tenancy. And the statute is to be applied only as far as practicable. (*Kaupper* case, *supra*, p. 59.) It places no restraint upon the parties as to the manner in which the intention shall be declared; neither is there any restriction as to the form of declaration. When a bond and mortgage, or an interest therein, are the subject-matter of a transaction, no interest in real estate is involved, and, as before noted, the mortgagor is not concerned with the understanding, agreement or interests of the mortgagees among themselves. No writing is called for to declare such interests, when personal property is the subject-matter of the transaction, apart from cases not cognate here. Personalty may be sold and assigned, and interest therein may be created, transferred or extinguished orally, and parol evidence is competent to establish the rights and interests of the parties. And most, if not all, of the cases above cited were tried on such a theory, and the decisions determining the nature of the tenure were supported by that kind of proof. The question of intention at the time of the transaction is the thing sought; and if sealed documents are not available for such proof, resort must be had to parol. Otherwise, how could it be possible generally to prove who owned the funds with which the security was bought, whether or not there were contributions by both husband and wife, or by other persons, or that the source of the funds was unknown, or who had held possession of the documentary evidence, what disposition was made of the income, or what were the terms of any agreement or what the course of business which the husband and wife had between themselves? In brief, how would be shown the interests, and the extent of the interests, of the respective mortgagees? Such facts constitute the usual proof of intention in this class of cases. (*McCullough, Kaupper, Blumenthal, Kennedy, Larmon* cases, *supra*.)

The judgment should be reversed and the complaint dismissed, without costs.

HILL, P. J., concurs; RHODES, J., concurs in result; HEFFERNAN, J., dissents, with an opinion, in which CRAPSER, J., concurs.

HEFFERNAN, J. (dissenting). Plaintiff instituted this action for the purpose of obtaining an adjudication that she is the owner of a one-half interest in the proceeds of a bond and mortgage payable to herself and defendant and also requiring him to account for money paid to him thereon. In his answer defendant asks for a reformation of the instruments in question to the effect that he is the sole owner thereof and that plaintiff's only interest therein

is in event of her survivorship. There is little, if any, dispute as to the pertinent facts.

On October 23, 1915, defendant purchased a vacant lot in the town of Florida, Montgomery county. Later and on May 3, 1921, he married plaintiff. After marriage he erected a house on the lot which he had previously purchased. Plaintiff made no financial contribution either in connection with the purchase of the land or the erection of the building thereon. On April 25, 1924, plaintiff and defendant conveyed the property in question to one Kaufman and wife and received in part payment of the purchase price a bond together with a mortgage on the premises sold as collateral thereto. The bond runs to " Augustus Belfanc and Anna E. Belfanc " and provides that the money due thereon shall be " paid to the said Augustus Belfanc and Anna E. Belfanc, their executors, administrators, successors or assigns." The mortgage states that it is to " Augustus Belfanc and Anna E. Belfanc, husband and wife."

On June 13, 1928, plaintiff and defendant separated, since which time the former has resided in the State of Connecticut and the latter in Amsterdam, N. Y.

In October, 1930, plaintiff obtained in the Superior Court of Connecticut a divorce from defendant on the ground of habitual intemperance and intolerable cruelty. We may assume that the Connecticut decree of divorce is invalid in this State because defendant was not personally served with process nor did he ever submit himself to the jurisdiction of the court of that forum.

It is plaintiff's claim that the bond and mortgage to which reference has been made constitute property belonging to her and defendant as tenants in common. Defendant's contention is that plaintiff is vested simply with a right of survivorship therein and hence is not entitled to any of the proceeds thereof during his lifetime.

The trial court held that plaintiff and defendant are tenants in common of the bond and mortgage. The court also found that defendant's counterclaim seeking a reformation of these instruments is barred by the Statute of Limitations. In his opinion in commenting of the counterclaim the trial judge wrote: " Defendant's suit for reformation set forth in his amended answer in my opinion fails for lack of clear and convincing proof of the necessary element of a mutual mistake of fact between the parties at the time the instruments were prepared and executed."

On this appeal defendant challenges the correctness of the determination of the trial court. So far as material here section 66 of the Real Property Law provides: " Every estate granted or devised

to two or more persons in their own right shall be a tenancy in common, unless expressly declared to be in joint tenancy." This provision also applies to personal property. (*Matter of Kimberly,* 150 N. Y. 90; *Matter of Blumenthal,* 236 id. 448.)

It is highly significant that in the bond and mortgage before us no mention whatsoever is made of a joint tenancy. Unless, therefore, there is competent evidence in the record that the parties intended a joint tenancy we must assume from the language of the statute above quoted that they hold the bond and mortgage as tenants in common. Defendant's counsel evidently recognized that from the language which the parties used in the preparation of these instruments a tenancy in common was established because in his answer he alleged that these documents did not carry out the " intent, purposes and agreement of the parties " and that there should be a reformation thereof in order to show that a joint tenancy was intended and that a provision be inserted therein to the effect " that the principal and interest thereon belong to, and the payments thereon shall be paid to, Augustus Belfanc for his own use during his lifetime."

On the trial, for the purpose of showing that a joint tenancy was intended, defendant's counsel attempted to prove the declarations of the parties prior to and at the time of the execution of the bond and mortgage. Defendant testified that he put plaintiff's name on the mortgage so that in case of his death it would go to her, and also that while both were present in the lawyer's office, where the papers were being prepared he told the lawyer to place plaintiff's name on the same so that if he died she would have it. In response to a question of the court as to what was then said he answered: " I was to have the principal and interest unless I died, * * * and if I should happen to drop away it was supposed to come to her." This testimony, and other of a like nature, was objected to by plaintiff as being an attempt to vary a written instrument. The trial judge ruled that he would receive the proof, not for the purpose of showing the intent of the parties, but solely on the question of the reformation of the instruments. Defendant's counsel, a lawyer of experience and ability, made no objection to the limited purpose for which this evidence was received and impliedly acquiesced in the court's decision on the subject. However in his brief he asserts that this testimony clearly shows that a joint tenancy was intended. That brings us at once to the question of the competency of this evidence. The statements of the parties cannot be considered on the question as to whether the bond and mortgage created a tenancy in common or a joint tenancy and the trial court properly held that they could not be admitted for that purpose.

(*Read* v. *Bank of Attica*, 124 N. Y. 671; *Jamestown Business College Assn.* v. *Allen*, 172 id. 291; *Smith* v. *Dotterweich*, 200 id. 299; *Dealy* v. *Klapp*, 203 App. Div. 216; affd., 236 N. Y. 631.) In the *Dealy* case a vendor brought an action for the specific performance of a contract for the sale of land. On the trial defendant was permitted to testify to a conversation with plaintiff's agent prior to the execution of the contract to the effect that the forfeiture clause providing for liquidated damages should be the exclusive remedy in case of default. In holding that the reception of such evidence was erroneous this court said: " This conversation did not constitute or relate to facts and circumstances attending the making of the contract. It consisted of utterances of the parties, not to explain the words of the contract, but to supply an intention not expressed therein. ' When a transaction has been even voluntarily embodied in a single document, no other utterance of intent or will on the same subject can be given legal effect. Hence, such a declaration is excluded from consideration even in the process of interpretation, not because it would not for that purpose be useful, but because it would be improper for the other purpose.' (Wigm. Ev., § 2471.) The case does not fall within that single exception to the rule which permits the admission of utterances of intention to explain an equivocation in relation solely to the subject or object of a gift or grant. (Thayer's Preliminary Treatise on Evidence [1898 ed.], 483.) The evidence was not admissible and cannot be considered. (*Thomas* v. *Scutt*, 127 N. Y. 133; *Lossing* v. *Cushman*, 195 id. 386.) "

Dean Richardson in section 425 of the fifth edition of his scholarly work on Evidence points out the exceptions to the parol evidence rule in this language: " There are two exceptions to the general rule that evidence of what was said between the parties to a written instrument, either prior to or at the time of its execution, cannot be received to contradict or vary its terms. The first embraces those cases in which the validity of the instrument is attacked on the ground that the writing, although purporting to be a contract, is, in fact, no contract at all, because it never had any valid legal inception. The second exception includes those cases which recognize the writing as valid but incomplete, and admits parol evidence, not to vary, but to complete the contract, the writing being only a part of it. (*Thomas* v. *Scutt*, 127 N. Y. 133; 27 N. E. 961; *International Assets Corp.* v. *Axelrod*, 245 App. Div. 300; 281 N. Y. S. 32.) " In a note to the section the author adds: " If, however, the party offering the parol evidence asserts that the contract is valid but seeks to modify, in some particular, the obliga-

tions which it imposes, the parol evidence rule is encountered, and the evidence offered for such purpose is never admissible, not even under an exception to the rule."

In his opinion Mr. Justice McNamee relies on this incompetent testimony on which to predicate his conclusion that the bond and mortgage are held jointly. In other words, the evidence upon which Justice McNamee relies to show the intention of a joint tenancy was admitted by the trial judge for the sole purpose of the counter-claim. Justice McNamee apparently is convinced that parol evidence is competent because in his opinion he writes: "The question of intention at the time of the transaction is the thing sought; and if sealed documents are not available for such proof, resort must be had to parol." None of the cases cited by Justice McNamee sustains his conclusion. *Matter of Kaupper* (141 App. Div. 54; affd., 201 N. Y. 534) is the only case cited by Justice McNamee where parol evidence was received. There the court held that where a husband and wife conveyed as tenants in common and accepted a purchase-money mortgage payable to both they held such mortgage jointly with the right of survivorship because such intention on their part was established by undisputed evidence. In that case the court, however, was careful to point out that the evidence as to intention was *received without objection.* That case clearly is no authority for the proposition that such evidence may be admitted over a proper objection.

Many other cases are cited in the brief of defendant's counsel and in the opinion of Justice McNamee in support of their contentions. The cases are all dissimilar in principle from the one before us. To demonstrate the correctness of this assertion we shall refer to a few of them.

In *West* v. *McCullough* (123 App. Div. 846; affd., 194 N. Y. 518) the court merely held that where a husband changes a savings bank deposit from his own name to the names of his wife and himself that act evidenced an intention to create a right of survivorship.

In *Matter of Kennedy* (186 App. Div. 188) the court held that where a husband and wife who were tenants by the entirety conveyed the property and took back a purchase-money mortgage, that mortgage stood in the place of the real estate and on the death of either mortgagee passed to the survivor as the real estate which it replaced would have done.

*Matter of Larmon* (212 App. Div. 273) is distinguishable because there the husband purchased mortgages solely with his own funds.

*Matter of Kane* (246 N. Y. 498) is distinguishable for the same reason because there it appeared that the husband purchased stock

solely with his own funds. In its opinion in that case the court said: " The presumption is that he did this with the intention that upon his death, the title to the shares, if still in the joint names, should pass to the survivor. (*West* v. *McCullough*, 123 App. Div. 846; 194 N. Y. 518; *Matter of Kaupper*, 141 App. Div. 54, 57; 201 N. Y. 534; *Sanford* v. *Sanford*, 45 N. Y. 723.) The presumption would not exist in the absence of the relation of husband and wife. It would not exist even then in the absence of evidence that the shares had been paid for by the husband solely. (*Matter of Blumenthal*, 236 N. Y. 448.) "

In *Matter of Blumenthal* (*supra*) the Court of Appeals held that where a husband and wife sold the real property, which they owned as tenants by the entirety, and received back a bond and mortgage payable to the husband and wife, the intention of the husband is the thing to be looked for and that under section 66 of the Real Property Law they became tenants in common and each had an equal share therein in the absence of proof of other intent. That case, instead of supporting defendant's contention, is an authority for plaintiff, because in writing for the court Judge CRANE said: " If the bond and mortgage are to be treated as a substitute for the real estate and as being held by the parties like an estate by the entirety or in joint tenancy, then Hannah Blumenthal as the survivor and her estate since her death is the sole owner of the securities and entitled to possession thereof. On the other hand, if the bond and mortgage are to be treated like any other bond and mortgage, the execution of the bond and mortgage to Alfred Blumenthal and Hannah Blumenthal, his wife, amounted to an ownership in common and each owned one-half of the amount of the security. Upon the death of either the half would pass to his or her estate. There was no mention in the bond and mortgage that the security was to be held in joint tenancy."

In none of these cases is there a holding or even an intimation to the effect that parol evidence may be admitted to show the intention of the parties.

We have, therefore, in this case a bond and mortgage which in the absence of other proof created a tenancy in common between husband and wife. We have no competent testimony as to any other intention by these parties. Then too we have in this case the fact that the plaintiff had some interest in the lands sold. She had an inchoate dower therein which she voluntarily released when she joined in the deed with defendant. To hold that the wife's only interest in the bond and mortgage is dependent upon her survivorship is to say that she made a gift of her dower interest to her husband. There is no proof in this case indicating that she agreed to release her dower interest without consideration.

In *Matter of Albrecht* (136 N. Y. 91) the court held that if the husband and wife *each* contribute to a joint investment and title is taken in their joint names to be held by them, their executors, administrators or assigns (as was done in this case), no presumption can arise that either intended to make a gift of his or her share to the survivor.

The case of *Brosnan* v. *Gaffney* (209 App. Div. 430) is decisive of the question involved here. There the husband owned the property before he married. His wife did not contribute to its purchase. She joined with him in a deed, and a bond and mortgage were taken back to the husband and wife. The court held that they were tenants in common in the bond and mortgage and not joint tenants.

The judgment appealed from should be affirmed, with costs.

CRAPSER, J., concurs.

Judgment reversed on the law and facts, and complaint dismissed, without costs.

The court reverses findings of fact numbered 3, 5, and 8, and all findings of fact denominated conclusions of law.