In the Matter of the Accounting of JOSEPH POLIZZO, as Committee of the Estate of MINNIE POLIZZO, an Incompetent. HARRISON B. WRIGHT, Individually and as Executor of JOSEPH POLIZZO, Deceased, et al., Respondents; AGNES W. TYMANN, as Administratrix of the Estate of MINNIE POLIZZO, Deceased, Appellant.

Argued March 3, 1955; decided May 26, 1955.

518

*William B. Hoffman* for appellant. I. Property of an incompetent in the name of the incompetent and another cannot be disposed of except in accordance with the Civil Practice Act. (*Matter of Haher* v. *Hamilton,* 267 N. Y. 474; *Sanford* v. *Sanford,* 45 N. Y. 723; *Boehmer* v. *Boehmer,* 264 Wis. 15; *Boyd* v. *De La Montagnie,* 73 N. Y. 498; *Loker* v. *Edmans,* 204 App. Div. 223; *Matter of McGuinness,* 290 N. Y. 117; *Matter of Wainman,* 121 Misc. 318; *Matter of Rasmussen,* 147 Misc. 564; *Matter of Maguire,* 161 Misc. 219; *Goldsmith* v. *Goldsmith,* 277 App. Div. 3.) II. Minnie Polizzo, who was the source of the funds used to purchase the mortgage, presumptively only gave to her husband Joseph a right of survivorship. No true joint tenancy was created. (*Matter of Albrecht,* 136 N. Y. 91; *Belfanc* v. *Belfanc,* 252 App. Div. 453, 278 N. Y. 563; *Wegmann* v. *Kress,* 152 App. Div. 937, 208 N. Y. 622; *Matter of Kane,* 246 N. Y. 498; *Matter of Kaupper,* 141 App. Div. 54, 201 N. Y. 534; *Sanford* v. *Sanford,* 45 N. Y. 723; *Wilcox* v. *Murtha,* 41 App. Div. 408; *Merritt* v. *Merritt,* 27 App. Div. 208; *Moskowitz* v. *Marrow,* 251 N. Y. 380.) III. The evidence offered at the trial by respondent did

not rebut the presumption arising from the origin of the mortgage and the relationship of husband and wife. IV. Harrison B. Wright had notice of the infirmities in the title of his assignor Joseph Polizzo.

*Harrison B. Wright,* in person, and *Robert F. Tomlin* for Harrison B. Wright, respondent. I. Joseph Polizzo and Minnie Polizzo, his wife, held the bond and mortgage in question as joint tenants. (*Matter of Blumenthal,* 236 N. Y. 448; *Matter of Albrecht,* 136 N. Y. 91; *Matter of McKelway,* 221 N. Y. 15; *Overheiser* v. *Lackey,* 207 N. Y. 229; *Mustain* v. *Gardner,* 203 Ill. 284; *Matter of Suter,* 258 N. Y. 104; *Belfanc* v. *Belfanc,* 252 App. Div. 453; *Matter of Suter,* 138 Misc. 85; *Matter of Brogan,* 165 Misc. 111.) II. There is in the law no presumption that if a wife transfers her solely owned personal property to her husband and herself, the fact of her sole ownership of itself indicates her intention to keep ownership, control and the right of disposition during her lifetime. (*Belfanc* v. *Belfanc,* 252 App. Div. 453; *Matter of Blumenthal,* 236 N. Y. 448; *Brosnan* v. *Gaffney,* 209 App. Div. 430.) III. If there was or is a presumption of intention as to either a husband or a wife, it will be overcome by evidence indicating a contrary intention. (*Belfanc* v. *Belfanc,* 252 App. Div. 453; *Matter of Kaupper,* 141 App. Div. 54, 201 N. Y. 534; *Matter of Blumenthal,* 236 N. Y. 448.)

DESMOND, J. When Minnie (sometimes called Amelia or Amelia Anna) Wigger married Joseph Polizzo in 1917, she owned in her own right and her own name a $20,000 bond and mortgage. Shortly after her marriage she assigned the bond and mortgage to one Bautz, an attorney, the stated consideration being $100, and at the same time Bautz, for an expressed consideration of $100 " paid by JOSEPH POLIZZO and AMELIA ANNA POLIZZO, his wife * * * parties of the second part " assigned the bond and mortgage to the parties of the second part. The habendum clause in the latter assignment was, in full, as follows: " To HAVE AND TO HOLD the same to the party of the second part, and to the successors, legal representatives the survivor, such survivor's heirs, assigns of the party of the second part, forever, subject only to the proviso in said indenture of mortgage mentioned." Attorney Bautz, as is obvious, acted as a conduit only. There is no evidence that the husband paid

his wife anything for the transfer. The question of law on this appeal is: did the husband acquire a present joint ownership in the bond and mortgage, or a right of survivorship only, as to it?

Minnie Polizzo became incompetent in 1928, remained incompetent, and was a patient in a mental hospital till her death in 1953. Her husband, although not appointed as committee of her property till 1945, managed her affairs, including this bond and mortgage. The husband died in 1948. In the present proceeding, which is an accounting by Joseph's executor as to Joseph's committeeship, a dispute arose as to the ownership of the bond and mortgage above described. In 1947, Joseph Polizzo had executed and delivered to Harrison B. Wright (who was his attorney and is now his executor accounting here as to Joseph's proceedings as committee of the latter's wife) an assignment or purported assignment of a one-half interest in the bond and mortgage. The assignment recites a consideration of $8,500, one half the amount of the bond and mortgage as somehow reduced by $3,000 during Minnie's life. Special Term held that Joseph Polizzo, the husband, never had more than a survivorship interest in the bond and mortgage, and that, accordingly, and since he predeceased his wife, he had no assignable interest therein, and that nothing passed by his assignment to respondent Wright. The Appellate Division, however, held unanimously that the assignment from attorney Bautz to Polizzo and his wife created a joint tenancy in the bond and mortgage, each thereafter owning an undivided half interest therein, and that the husband's assignment to Wright was effective to terminate the joint tenancy, and that, thereafter, Wright and Mrs. Polizzo were owners in common. We agree with the Appellate Division.

If Minnie and Joseph had not been wife and husband at the time of the assignment of the mortgage to them, they would have become joint tenants with right of survivorship, and with the further right in each of them to terminate the joint ownership and create a tenancy in common, by conveying his or her interest to a third party (*Matter of Suter,* 258 N. Y. 104, 106). If the bond and mortgage had been owned originally by the *husband* and he had assigned it to himself and wife during marriage, or if he furnished the consideration and arranged to have it made to himself and his wife (with no inconsistent

habendum clause, see second last paragraph of this opinion), then there would apply a presumption, in the absence of proof to the contrary, that the husband intended that his wife have a survivorship right only, and not present ownership of one half, or of any other part (*Matter of Albrecht,* 136 N. Y. 91; *West* v. *McCullough,* 123 App. Div. 846, affd. 194 N. Y. 518; *Matter of McKelway,* 221 N. Y. 15; *Matter of Kane,* 246 N. Y. 498; *Belfanc* v. *Belfanc,* 252 App. Div. 453, affd. 278 N. Y. 563). But none of those cited cases, and no others we find, deal with a transfer from a *wife* to her husband, without proof of consideration or specific intent. In the *West* case (123 App. Div. 846, 847, 848, 849, *supra*), it is explained that the rule creating the presumption above described (and operative as to a husband-to-wife transfer) is an aspect or result or vestige of the common-law rule that a husband owned all his wife's personalty, and that thus, when he purported to pass to her an interest in his own personalty, he could not have intended to give her anything greater than a right of survivorship. And consideration or lack thereof, in those common-law situations, had nothing to do with the matter, since the wife's personalty was the husband's, and so he would always be furnishing the consideration. But none of that historical theory has any impact on a modern-day transfer by a wife of her own personal property to herself and her husband, jointly. The question seems to be of first impression in this court. We might, therefore, choose to use the old (husband-to-wife transfer) presumption, in the absence of proof as to actual intent, that survivorship only was intended. But, since that presumption is a remnant only of a body of law that never did apply to transfers from wife to husband, we see no reason for giving it a new application to a new situation. In other words, we decline to enlarge the coverage of the old presumption. Therefore, and since the assignment to Joseph Polizzo and Minnie Polizzo would have created a present joint tenancy had they been unmarried, we hold that the same kind of tenancy was created, notwithstanding their marital relationship.

There is nothing in the above-quoted language of the habendum clause in the assignment from Bautz to the Polizzos to require a different result. That inartistically drawn clause reads: " to the party of the second part, and to the successors, legal representatives the survivor, such survivor's heirs, assigns of the

party of the second part ". Presumably the words " the survivor, such survivor's heirs " were dropped into the middle of the customary verbiage to show an intent that, on the death of either husband or wife, the whole bond and mortgage should become the property of the survivor. But the very same clause makes the assignment run to " assigns of the party of the second part ", and that language expresses the transfer of a present interest to the " party " of the second part.

The order should be affirmed, with costs to all parties appearing separately and filing separate briefs payable out of the estate.

BURKE, J. (dissenting). The question presented by this appeal is whether it is presumed that there is an intention to create a right of survivorship only and not a joint tenancy in a mortgage, when the mortgage is in the names of both the husband and the wife and the entire consideration therefor was paid by the wife from her separate funds.

In 1912, John E. Wigger and Amelia Anna Wigger, brother and sister, owned a mortgage in the amount of $20,000. Thereafter, John Wigger died and his executor in 1916 transferred an undivided one half of such bond and mortgage to Amelia Anna Wigger, the expressed consideration being $10,000.

Amelia Anna Wigger married Joseph Polizzo one year later and in August of 1917, as Amelia Anna Polizzo (also referred to in this proceeding as Minnie) transferred to Louis M. Bautz, an attorney, the bond and mortgage for the consideration of $100 and at the same time said Louis M. Bautz, in consideration of $100 and without recourse, assigned the mortgage to "JOSEPH POLIZZO AND AMELIA ANNA POLIZZO, his wife ". The habendum clause read as follows: " To HAVE AND TO HOLD the same to the party of the second part, and to the successors, legal representatives *the survivor, such survivor's heirs,* assigns of the party of the second part, forever, subject only to the proviso in said indenture of mortgage mentioned." (The italicized words were typed in on the printed form.) These assignments were recorded simultaneously on August 16, 1917.

In 1927 the land was sold to the Salus Realty Corporation. Salvatore Massucci, the president of this corporation, testified that he made all the interest checks payable to " Joseph Polizzo

and Amelia Polizzo" until Joseph Polizzo instructed him to make half the payments to Harrison B. Wright, the respondent accountant in this proceeding.

On July 1, 1928, Amelia Polizzo was committed to a mental institution, where she remained until her death in 1953. In 1945, Joseph Polizzo was appointed the committee of his wife.

In 1942, Joseph Polizzo agreed with Massucci to reduce the principal of the mortgage by $3,000, reduce the interest from 5% to 4½% and extend the time of payment to July 1, 1947.

By an assignment dated September 10, 1947, Joseph Polizzo "in consideration of * * * ($8500) * * * paid by Harrison B. Wright" assigned to Wright "all of my right, title and interest, being a one-half share or interest therein, of, in and to" the mortgage in question.

Joseph Polizzo died on November 2, 1948, leaving a will which was admitted to probate in the Nassau County Surrogate's Court and letters testamentary were issued to Harrison B. Wright on July 20, 1949.

The surety on the Polizzo committee bond moved to punish Wright for contempt for failure to file an account of the proceedings of Joseph Polizzo as committee from the date of his appointment to the date of his death, as directed by an order of the Supreme Court entered in November, 1949. In January, 1951, the account was filed in the office of the Clerk of the County of Nassau. Thereafter, in June, 1951, the special guardian for the incompetent filed objections to the account on the ground that it only included one half of the mortgage in question instead of the whole thereof.

Two hearings were held on the question of ownership of the mortgage; the first in June, 1951, after which Special Term held that the entire mortgage was the property of the estate of the incompetent and that her husband had only a right of survivorship.

Thereafter, Harrison B. Wright, the assignee of one half of the mortgage, not being a party to the proceeding, was permitted to intervene individually and a further hearing was thereupon held and the court adhered to its original decision.

The Appellate Division modified the order of the Supreme Court insofar as it held that the mortgage was the property solely of the estate of Amelia Polizzo, finding that the assign-

ment to the husband and wife, by its terms, created a joint tenancy in the mortgage whereunder each owned an undivided one-half interest therein and that said tenancy was terminated by the husband's assignment of his interest to Wright, whereby Wright and the wife became tenants in common.

The rule in this State has always been that an assignment of a chose in action, whether a bank account, a bond and mortgage, a note or other investment in personalty, taken in the joint names of husband and wife, conferred on the wife only the right to succeed by survivorship, when the entire consideration was paid by the husband or there was a gift by a husband to his wife of an interest in property belonging solely to himself. (*Matter of Albrecht*, 136 N. Y. 91; *West* v. *McCullough*, 123 App. Div. 846, affd. 194 N. Y. 518; *Matter of Kane*, 246 N. Y. 498; *Belfanc* v. *Belfanc*, 252 App. Div. 453, affd. 278 N. Y. 563.) In such cases husband and wife never became joint tenants in the strict sense. From such a transaction without proof of a different intent declared at the time of the transaction, it is presumed that the husband intended to benefit his wife with the ownership of the property at his death, but retaining the complete ownership, control and right of disposition. The presumption would not exist in the absence of the relation of husband and wife. Indeed, it would not exist in the absence of evidence that the consideration was paid by the husband or that there was a gift of an interest in property belonging solely to the husband. Thus, there are two conditions required; the marital relationship and the creation of the security from the sole money or property of the husband. All the cases cited were decided a half a century or more subsequent to the enactment of the various acts for the benefit of married women, under which married women were to be regarded as if they were sole with respect to their property rights. Nevertheless, this court called on the presumption to defeat the claims of married women, disregarding the change in status of married women since the abolition of the common-law restrictions. Fairness dictates that married women should be accorded equal treatment. Although there is a lack of authority relating to a transfer from a wife to a husband, there are no sound reasons to apply a double standard in order to justify a refusal to extend the presumption to transfers or transactions wherein the property of the wife

was the subject of the transaction. The contention that the presumption is anachronistic in that it flows from the common-law restriction on a married woman's ownership of property is without substance, because the presumption cannot be invoked, unless, in addition to the marital relationship, the donor spouse is shown to have paid the consideration or made a gift of solely owned property. (*Matter of Blumenthal*, 236 N. Y. 448.) Moreover, the presumption can be rebutted not only by a showing of a contrary intent at the time the transfer took place but also by proof that the consideration was not solely supplied by the husband. (*Matter of Kane*, 246 N. Y. 498, 504, *supra*.) Surely, an inquiry into who paid the consideration has not the slightest relation to married women's property rights under the common law. Rather it seeks a clue as to the donor's intent. Without proof of different intent, it can not be assumed that such donors intended to give their spouses such control over the donated asset that he or she may alienate one half of it without the permission of the spouse who supplied the *sole* consideration for the asset. Such an assumption ignores the unity of the marital relationship.

The evidence offered at the trial by the respondent did not rebut the presumption arising from the origin of the mortgage and the relationship of husband and wife. Since the mortgage was originally the family property of the Wiggers, brother and sister, and since the habendum clause of the assignment to the husband and wife contained the typewritten words added to the usual printed form " the survivor, such survivor's heirs ", the burden of proof was on the respondent to establish an intention to create a joint tenancy. The public records showed the mortgage to be the sole property of the wife prior to the assignment to the husband. The proof of the gift by the wife of property, solely belonging to her, makes out a prima facie case of a joint tenancy with a right of exclusive present enjoyment in the wife and a right of survivorship in the husband. The added words " the survivor, such survivor's heirs " without further explanation express an intention to limit the ownership of the mortgage. The evidence, adduced by the respondent as to the payment of interest checks to Joseph and Amelia Polizzo and as to the supervision by the husband of the mortgage extensions, is insufficient to overcome the inference that the wife retained the right

of exclusive present enjoyment. The proof of interest payments and the servicing of the mortgage by the husband were not inconsistent with the wife's ownership of the mortgage, particularly since the wife was, with the exception of a few months, an inmate of a mental institution. There are no special equities to be weighed; the respondent was aware of the mental illness of the wife, and the fiduciary relationship of the husband as committee of the estate of the wife. The words in the habendum clause of the assignment to the husband and wife " the survivor, such survivor's heirs " effectively gave notice to a prospective purchaser of a possible limitation on the right of the husband to transfer anything other than rights to be acquired by survivorship. In the case before us we find that there was an intention to create a right of survivorship and not a true joint tenancy. Section 66 of the Real Property Law comes into operation only in the absence of other evidence. Consequently *Matter of Kimberly* (150 N. Y. 90) and *Matter of McKelway* (221 N. Y. 15) are not applicable. *Matter of Kimberly* (*supra*) holds that a bequest to three people, silent as to whether it is a joint tenancy or a tenancy in common, must be deemed to be a tenancy in common. In *Matter of McKelway* (*supra*) there was no proof as to the source of the consideration.

These views lead to a reversal of the order of the Appellate Division.

FULD, FROESSEL and VAN VOORHIS, JJ., concur with DESMOND, J.; BURKE, J., dissents in an opinion in which CONWAY, Ch. J., and DYE, J., concur.

Order affirmed.