In the Matter of the Estate of Sol Levinsky, Deceased. Myron Ganz, as Executor of Sol Levinsky, Deceased, Appellant; Evelyn Levinsky et al., Respondents.

Second Department, March 29, 1965.

*Louis H. O. Fischman* for appellant.

*George S. Fishman* for Evelyn Levinsky, respondent.

SAMUEL RABIN, J.   Between 1958 and the date of his death on March 1, 1963, the decedent purchased 15 second mortgage participation certificates aggregating in face value some $250,000 to $300,000.   When he died, 10 certificates were unredeemed.   Of these, 5 of face value of $81,663.16 had been issued in the sole name of the decedent.   The remaining 5, of the face value of $142,500, had been issued intermittently between September 30, 1959 and November 15, 1962 to "Sol Levinsky or Evelyn Levinsky," respectively the decedent and his wife. In a discovery proceeding, the temporary administrator of the husband's estate claimed that the latter 5 certificates and the yield thereon accruing since decedent's death were the property of the estate.   In her answer, the widow claimed that these certificates were her individual property as surviving joint tenant.   She also counterclaimed for a decree of reformation so as to remove ambiguity, if any be found, in the original issuance of these certificates in joint tenancy with the right of survivorship passing to her.

At a hearing before the Acting Surrogate to determine the conflicting claims of ownership, the underlying issue was declared to be the ascertainment of the decedent's intention when he placed the five disputed certificates "in the names of himself and his wife."   From the proof adduced, it appeared that decedent alone had paid for these certificates out of his separate property.   After the differences between a joint tenancy and a tenancy in common, as well as the perquisites of individual ownership, were explained to him, decedent had expressed to the issuing trustee the desire that the title of these five certificates be described in a manner which would permit

the survivor to become the sole owner. The issuing trustee, a lawyer, believed that the inscription of these certificates in two names conjoined with " and " denoted a tenancy in common, and that issuance in two names disjoined by " or " created a joint tenancy with the right of survivorship.

It further appeared that on February 23, 1961, the decedent executed his last will and testament, drawn by the said issuing trustee and his law partner, both of whom acted as attesting witnesses. As of such date, the decedent's gross estate was valued at about $450,000. By the terms of the will, the wife was bequeathed the specific sum of $150,000 for her own use absolutely and forever, and the remainder of decedent's estate was left in specified percentage shares to three nephews, three nieces and four charities. After he had made his will, the decedent from time to time purchased additional securities; and these were registered about equally in the names of " Sol Levinsky or Evelyn Levinsky ", and in his own name.

On the basis of the proof adduced, the learned Acting Surrogate found: (1) that decedent had specifically directed the issuance of the disputed mortgage certificates in the joint names of himself and his wife, with the right of survivorship; and (2) that such intent was of controlling weight in the conclusion that the certificates were the property of the wife. The Acting Surrogate found further that by reason of the two kinds of mortgage securities which decedent had purchased, and by reason of the nature of the testamentary bequest to the wife, the decedent had made clear his desire to provide for his wife benefits in excess of those provided for her in his will. Accordingly, the Acting Surrogate concluded that the widow was entitled to a judgment of reformation on her counterclaim.

Since the disputed certificates were acquired subsequent to April 20, 1959, the effective date of section 56-a of the Domestic Relations Law (L. 1959, ch. 580), now section 3–311 of the new General Obligations Law (§ 19–101, subd. 4; § 19–103), the appellant executor contends chiefly that the enactment of this statute destroyed the prior presumption (absent some contrary manifestation) that a survivorship estate in favor of a wife was created in instances where the husband was the source of the property or of the consideration paid therefor and title was placed in the names of both spouses. It is argued: (1) that section 56-a was adopted to abrogate this special rule and to make the interest of a husband or wife the same as the interest which would accrue to other persons in a similar transaction where no marital relationship existed; and (2) that, as a consequence, the Acting Surrogate at bar could take no proof of

decedent's intentions because a tenancy in common in the subject certificates was mandated by section 66 of the Real Property Law, since no express provision for a joint tenancy had been stated in any of the certificates.

Insofar as relevant, section 66 of the Real Property Law provides that "Every estate granted or devised to two or more persons in their own right shall be a tenancy in common, unless expressly declared to be in joint tenancy".

In instances of marital acquisition of property, the case law never literally followed the language of section 66, but engrafted upon it a presumption not to be found in its text. Thus, where transfer of title to the joint names of husband and wife was effected, even though the consideration for the transfer moved solely from the husband and the muniment of title contained no definitive words of the nature of the new ownership, an exception to the strict construction of section 66 was established by case law; and it was presumed, in the absence of proof to the contrary, that the husband intended to grant to his wife a right of survivorship in the property but no present ownership of one half or of any other part of the property (*Matter of Polizzo,* 308 N. Y. 517, 520–521, 524, cert. den. *sub nom. Tymann* v. *Wright,* 350 U. S. 911; *Matter of Bricker* [*Krimer*] v. *Krimer,* 13 N Y 2d 22, 27; *Matter of Albrecht,* 136 N. Y. 91, 95; *Matter of Kane,* 246 N. Y. 498, 504; *West* v. *McCullough,* 123 App. Div. 846, 849, affd. 194 N. Y. 518; *Matter of Kaupper,* 141 App. Div. 54, 57, affd. 201 N. Y. 534; *Matter of Schlesinger,* 22 Misc 2d 810, 812).

In time, the language of section 66 and the exceptional common-law presumption raised thereunder in instances of marital acquisition of property, came under critical scrutiny (1959 Report of N. Y. Law Rev. Comm., p. 361 *et seq.*). The commission noted that by virtue of this case law exception the wife was being accorded a mere future expectancy in marital property, defeasible by any transfer the husband might make of the property during his lifetime. The commission construed the case law as granting to the wife a gift *causa mortis* which the husband might revoke in his lifetime and which did not take effect until his death if not previously rescinded. The commission pointed out that such an exceptional rule appeared to be recognized only in New York, and stamped it as an anomaly and an anachronism growing out of the common-law principle that a husband owned all of his wife's personalty. The commission urged that a husband's transfer of property into the name of himself and his wife manifested an intent to confer upon the wife some present interest in the property, which

might be either a joint or common interest. The commission therefore advocated the abolition of the presumption mentioned and suggested "that the nature of the interests in personal property * * * should be the same, where the parties are husband and wife, as where they are not, without regard to the identity of the person who made the transfer or from whom the consideration for the instrument or transaction proceeded " (*op. cit.,* p. 363).

Upon the foregoing report, the Legislature adopted the recommended change in the law by enacting new section 56-a (L. 1959, ch. 580), to be added to the Domestic Relations Law in the form submitted by the Law Revision Commission. In a footnote to this enactment, it was pointed out that the purpose of the statute was, in part, to abrogate the rule that, unless a different intention is shown, a transfer of personal property into the names of husband and wife operated to give the wife a right of survivorship only and created no present interest in her, if the property or the consideration therefor came from the husband (L. 1959, ch. 580, n.). By further legislative action, section 56-a of the Domestic Relations Law was repealed (General Obligations Law, § 19–101, subd. 4) ; and effective September 27, 1964 (General Obligations Law, § 19–103), section 56-a was reconstituted as section 3–311 of the new General Obligations Law without change.

In our opinion the history of the enactment of section 56-a lends no support to the appellant executor's fundamental contention that this statute curtailed the property rights of the surviving wife to the certificates here in issue.

While section 56-a of the Domestic Relations Law was designed to efface the presumption of survivorship mentioned, it was also intended, not to restrict the wife's property rights, but to enlarge them to accord with the reality of the actual situation existing at the time of their creation. Moreover, the language of subdivision 1 of section 56-a, indicating that the transaction as to husband and wife is to be construed as " a joint tenancy or a tenancy in common, as the case may be," portends the use of parol evidence where the instrument of ownership, as at bar, is shrouded in uncertainty as to the nature of the respective interests of the husband and wife. Even if this language of section 56-a did not apply and even if only section 66 of the Real Property Law governed this case, the latter statute, which is applicable to personal property, creates only a rebuttable presumption of tenancy in common; and where the muniment of title is ambiguous, and parol evidence shows that the parties to the transaction so intended, a joint tenancy

may be found (*Matter of Phillips,* 19 A D 2d 743; *Overheiser* v. *Lackey,* 207 N. Y. 229, 232–233). Under section 66, it was established beyond doubt that the statute placed no restraint upon proof of the intention of the parties in the creation of the estate in issue, and that parol evidence was competent to establish the rights and interests of the respective claimants (*Belfanc* v. *Belfanc,* 252 App. Div. 453, 457, affd. 278 N. Y. 563; *Matter of Kaupper,* 141 App. Div. 54, 57, affd. 201 N. Y. 534, *supra*).

Accordingly, the Acting Surrogate was free to accept parol evidence as to the decedent's intention with respect to the certificates in issue when he set up ownership in the names of " Sol Levinsky or Evelyn Levinsky ", and to find, as he did, that the decedent desired to establish a joint tenancy with the right of survivorship in favor of his wife. Under the proof adduced, the trier of the fact properly refused to find either a tenancy in common or a relationship established for the mere convenience of the decedent.

We agree with the Acting Surrogate that what decedent did with other certificates, registered only in his name and in conjunction with his will, was consistent with his intention that the subject certificates were to be treated as joint property with survivorship in the widow. In view of the fact that decedent had a gross estate of $450,000 at the time he drew his will, it seems apparent that he was trying to leave more than half of it, plus $10,000 to his wife (her intestate share). It seems obvious that he wanted to pass to her, by the $150,000 bequest and by the $142,500 in jointly-owned certificates, a gross roughly of $292,500 with some shrinkage for taxes and expenses. Whether he left her enough is not an issue for determination in this discovery proceeding. If relevant at all, it might be said that if decedent left only $150,000 to his wife, without meaning to pass to her the $142,500 in the certificates in issue, then on the face of things he was leaving for his childless wife much less than one half plus $10,000 of his $450,000 estate which the law would sanction as her intestate share. Thus to negate the finding of survivorship in the certificates would invite a possible contest on the issue of the widow's right to take by election.

We have examined other grounds for reversal urged by the executor appellant, and find no reversible error. We hold that the issuing trustee, an attorney, was not incompetent as a witness in this proceeding, since he had no pecuniary interest in the judgment sought by the estate fiduciary or by the widow, though he did of course have some remote concern with the issues raised (*Reynolds* v. *Snow,* 10 A D 2d 101, 109, affd.

8 N Y 2d 899). Hence, the Acting Surrogate properly ruled that the attorney trustee was not a party or person interested in the event who was testifying concerning a transaction or communication with decedent (CPLR 4519, formerly Civ. Prac. Act, § 347). The record supports the Surrogate's finding that vis-a-vis the decedent the issuing trustee (apart from the will) was a business contact and hence that there was no disclosure of a privileged communication (CPLR 4503, formerly Civ. Prac. Act, §§ 353, 353-a, 354). The prohibitions against disclosure by a lawyer do not apply where he functions, not in his professional capacity, but as an agent or negotiator in a commercial venture (*Kent Jewelry Corp.* v. *Kiefer,* 202 Misc. 778, 783; *Matter of Le Fever* v. *Lefkowitz,* 18 Misc 2d 278, 284).

Apart from the foregoing, as a witness to the will and as part scrivener of the instrument drawn by his law partner, there is no question that the trustee's testimony was competent to resolve any ambiguity in the instrument (CPLR 4503, subd. [b]; *Matter of Morrison,* 270 App. Div. 318, 319). By a parity of reasoning, it seems to us that the trustee was likewise competent " as scrivener " to testify as to the decedent's intent with respect to the ownership of the mortgage certificates in issue, particularly since the temporary administrator called him as a witness and examined him as to the transactions with decedent concerning these mortgage certificates, beginning in 1958 and ending with decedent's death (CPLR 4519; Richardson, Evidence [9th ed.], § 419, p. 428). In any event, the present statute relating to an attorney's disclosure of confidential subjects in will matters (CPLR 4503, subd. [b]) is based on the notion that the client's wish for confidence comes to an end with his death, save for matters that will disgrace his memory; and it is suggested that the same rule ought to apply to " deeds," in which category the instant mortgage certificates seem to fit (5 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 4503.29, p. 45-114).

The decree should be affirmed. Since the question here presented as to the effect of section 56-a of the Domestic Relations Law was a novel one, costs should be awarded to all parties filing briefs, payable out of the estate.

UGHETTA, Acting P. J., CHRIST, BRENNAN and HOPKINS, JJ., concur.

Decree affirmed, with costs to all parties filing briefs, payable out of the estate.