**HELVERING, Commissioner of Internal Revenue, v. MILLER et al.**
**No. 225.**

Circuit Court of Appeals, Second Circuit.
Feb. 4, 1935.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and L. W. Post, Sp. Assts. to the Atty. Gen., for appellant.

Jackson, Fuller, Nash & Brophy, of New York City (John G. Jackson, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The Commissioner appeals from an order of the Board of Tax Appeals which refused to surcharge the defendants, executors of one Charles G. Miller, with the full value of certain shares of stock in an English company. The case hinges upon whether the shares were held jointly or in common; if jointly, their whole value was part of Miller's estate when he died (section 302 (e) of the Act of 1926, 26 USCA § 1094 (e); if in common, the estate comprised only the value of his aliquot part. Miller had originally held the shares singly, but in 1923 for some undisclosed reason he decided to transfer them to himself, his wife and his six children. To that end he and they executed a deed on June eighteenth of that year, which recited that in consideration of ten shillings, which was in fact never paid, he did "bargain, sell, assign and transfer to the said Transferees," all the shares, "subject to the several conditions on which I held the same * * * and we, the said Transferees do hereby agree to accept and take the said shares subject to the conditions aforesaid." The deed was sent to England along with the certificates, in the place of which the company issued

new ones in the name of the eight transferees. The ordinary dividends upon one half of the stock were directed to be paid to Miller; those on the other half to his wife. The articles of the company spoke only of "joint-holders" of shares, and one article provided that "in the case of the death of any one or more of the joint-holders of any registered shares or registered stock, the survivors shall be the only persons recognized by the Company as having any title to or interest in such shares or stock." The name of the first person mentioned in a certificate of "joint registered holders" was to have the sole right to vote on all the shares. Miller died in 1927 and the Commissioner included in his estate the full value of the shares. The Board decided that they had been held in common and that only one-eighth was part of the estate. The Commissioner appealed.

█ The argument has taken a wider range than seems to us necessary, for the order was right without regard to how far the law of England—which incidentally was not proved—or the articles of incorporation, govern the ownership of the shares. We shall assume that the company did not recognize any ownership but "joint holding," and that this meant joint ownership with survivorship, as it is known to the common law. Thus when Miller died the company could, and probably was bound to, treat his wife and children as the sole owners; similarly when the wife died, and so on. But though this be true, it does not follow that as between themselves the eight transferees were joint-owners; that is a matter of their intent, if that intent is manifested plainly enough. We assume that no one would for example question the result, had they by a separate instrument declared a trust for the benefit of themselves as owners in common. The survivors would have held the legal title upon that trust, and been accountable to the executors of those who died. Such a formal declaration is by no means necessary; the ownership of partners in a firm is the classic example; equity disregards the joint legal title to the firm assets by imposing a constructive trust in favor of a dead partner's executors. Now the deed without registry upon the company's books effected a transfer of Miller's interest in the shares. Johnston v. Laflin, 103 U. S. 800, 26 L. Ed. 532; Ohio Valley Nat'l Bank v. Hulitt, 204 U. S. 162, 167, 168, 27 S. Ct. 179, 51 L. Ed. 423; Direction Der Disconto-Gesellschaft v. U. S. Steel Corporation, 267 U. S. 22, 45 S. Ct. 207, 69 L. Ed. 495; Early v. Richardson, 280 U. S. 496, 50 S. Ct. 176, 74 L. Ed. 575, 69 A. L. R. 658; Masury v. Arkansas Nat. Bank, 93 F. 603 (C. C. A. 8); Giesen v. London, etc., Co., 102 F. 584 (C. C. A. 8). The transferees became owners of the shares co instante, and they held not jointly, but in common; of the last there cannot be a shadow of doubt. English equity, long before the first of the New York statutes, had already come to look with disfavor upon joint ownership, and made shift to avoid it whenever it could find an excuse. Rigden v. Vallier, 2 Ves. Sen. 252; Jolliffe v. East, 3 Brown's Ch. 25. For almost a century and a half it has been the law of New York (Real Property Law, § 66), that all estates in real property granted to two or more are "a tenancy in common, unless expressly declared to be in joint tenancy." Not only have the New York courts extended this to personal property, but they have shown every disposition to insist literally upon an "express declaration." In re Kimberly, 150 N. Y. 90, 44 N. E. 945; Commercial Bank v. Sherwood, 162 N. Y. 310, 56 N. E. 834; Overheiser v. Lackey, 207 N. Y. 229, 100 N. E. 738, Ann. Cas. 1914C, 229; In re Blumenthal, 236 N. Y. 448, 141 N. E. 911, 30 A. L. R. 901. It was here not an equivalent that the deed was to be used to procure a change of ownership on the books of the company into joint ownership. It was not an equivalent that the transferees declared in the deed that they would hold subject to the conditions on which Miller had held. If we assume that this included all the conditions in the articles, though Miller had himself held singly, still it was not an "express declaration" that the ownership was "to be in joint tenancy." The intent must be inferred indirectly from the incorporation of the articles by reference, and that is not enough. And even though it were, the articles themselves professed to govern only the relations between the company and the joint-holders: "the survivors shall be the only persons *recognized by the Company* as having any title to or interest in such shares." Finally, it was not an equivalent that one of Miller's sons, effecting to speak for his father in a letter to the company, declared that the eight names were to "appear as joint holders." That declaration as the case stands was competent only against the son and then only as an admission; it could not be used against his father's executors.

Therefore, after the deed was delivered, the shares were held in common.

On the other hand after it and the certificates were sent to the company, and the company issued new certificates, properly ignoring the ownership created in New York, the legal title was by hypothesis joint. The company's act of course changed the relations between itself and the transferees either severally, or as a group. But it has been law since Black v. Zacharie, 3 How. 483, 512, 11 L. Ed. 690, that the "equitable title" to shares may be different from the legal. This is such a case. The change in title did not involve any change in the transferee's intent. It would be absurd to suppose so; it would be necessary to assume that although they meant to hold in common from the execution of the deed to the issuance of the new certificates, they meant their ownership thereafter to be joint. Such veering is the one inadmissible purpose to impute to them. But for the peremptory command of the statute, and as mere inference, it would be reasonable to say that they intended their ownership to be whatever the English law imposed; that they accepted this along with their relations with the company, which they had to accept anyway. But that conclusion is out of the case; they meant to be co-owners at least until the issue of the new shares. If so, mere juristic inertia is enough to establish the endurance of that intent; there is no evidence on which to base a change. Thus, the situation is ripe to invoke a constructive trust by which the legal title may be brought into registry with the actual purpose. Brothers v. Porter, 6 B. Mon. (Ky.) 106. Miller's executors could have compelled the survivors to surrender their testator's share; if so, the situation was not covered by section 302 (e) of the Act of 1926.

Order affirmed.