**HOXIE et al. v. PAGE.**

No. 2545.

District Court, D. Rhode Island.

July 15, 1938.

906

Harold B. Tanner, Colin MacR. Makepeace, and Robert W. Hankins, of the firm of Tillinghast & Collins, all of Providence, R. I., and Ferdinand Tannenbaum, of New York City, for plaintiffs.

James W. Morris, Asst. Atty. Gen., Andrew D. Sharpe and Samuel E. Blackham, Sp. Assts. to Atty. Gen., Frank F. Korell, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., and J. Howard McGrath, U. S. Atty., and George F. Troy, Asst. U. S. Atty., both of Providence, R. I., for defendant.

MAHONEY, District Judge.

This is an action of the case in assumpsit. The writ was issued June 27, 1932. The plaintiffs, executors under the will of William D. Hoxie, late of the Town of Westerly in the State of Rhode Island, deceased, seek to recover from the Collector of Internal Revenue for the District of Rhode Island certain sums of money and interest alleged to have been illegally collected as a federal estate tax and interest on the estate of said William D. Hoxie, deceased.

The defendant has pleaded the general issue. Jury trial has been waived. The case was heard on stipulated facts. Additional evidence not inconsistent with the stipulated facts was received.

William D. Hoxie died on January 12, 1925, and, subsequently, his executors, the plaintiffs in this action, filed a federal estate tax return which showed a net taxable estate of $1,709,286.87 and a tax of $188,671.64. After a deduction of $47,167 for state taxes, the tax was paid.

There were registered at the time of Mr. Hoxie's death, in the names of Mr. Hoxie and his wife, and in the names of Mr. Hoxie and his wife and daughter, certain shares of stock in Babcock & Wilcox, Limited, an English company with offices in London, England. Although this stock was reported in the executor's return, the claim was made that no part of its value should be included in the decedent's gross estate. In his report to the Commissioner, the Collector of Internal Revenue recommended that the entire value of this stock should be included in the gross estate of the deceased, and that a deduction of $142,000 for charitable legacies should be allowed only to the extent of $35,500. He also found that the net taxable estate was $3,763,761.35. The tax on this, before deducting any credit for state taxes, amounted to $423,701.82. In accepting this report, the Commissioner of Internal Revenue fixed the amount allowable as a deduction for charitable legacies at $58,122.79. A deficiency assessment of $231,665.98 was then made. This deficiency with certain deductions as credits for state taxes, was paid under protest on July 6, 1927. Certain claims for refund were allowed in the sum of $9,544.48, and this sum plus interest was refunded on August 3, 1931.

William D. Hoxie, the deceased, was the nephew of Harriet H. Wilcox, who was a stockholder in Babcock & Wilcox, Limited. Upon her death in 1901 she left a will in which William D. Hoxie, Charles Perry and John E. Eustis were named as executors. At the time the estate was distributed in 1906, William D. Hoxie was entitled to receive from the estate certain shares of this stock which were transferable only by a separate instrument or deed of transfer in a form prescribed by that company. At the direction of said William D. Hoxie on April 13, 1906, the executors of said Harriet H. Wilcox executed two deeds by which they conveyed 10,846 shares and 6,200 shares, respectively, of said stock of said Babcock & Wilcox, Limited, to William Dixie Hoxie and Vinnie Brown Hoxie, his wife, whose correct name is Lavinia B. Hoxie.

These deeds contained the clause: "To hold unto the said transferee(s), (their) executors, administrators and assigns, subject to the several conditions on which we held the same immediately before the execution hereof; and the said transferee(s) do hereby agree to accept and take the said stock subject to the conditions aforesaid."

The first deed conveyed 10,846 Ordinary Shares of the capital stock of said Babcock & Wilcox, Limited, and the consideration named therein was Five Shillings, paid by William Dixie Hoxie. William Dixie Hoxie and Vinnie Brown Hoxie were the transferees.

By a deed in the same form, with a consideration of £10,850 recited therein, 6,200 shares were conveyed by the same transferors to the same transferees.

These shares, totaling 17,046, and thus transferred, were received by Babcock & Wilcox, Limited on May 9, 1906, and registered by that company in the names of William Dixie Hoxie and Vinnie Brown Hoxie, transferees, on May 11, 1906.

These deeds of transfer were executed in the State of New York.

William D. Hoxie purchased 2,000 additional shares of said stock in the same company on August 29, 1907, and by his direction he and his wife were named as the transferees of these shares, and the same were transferred to them by a deed similar to the other deeds. This deed was executed in the State of Rhode Island and forwarded to the said company which received it on September 17, 1907, and thereupon, on September 24, 1907, registered the said shares in the names of said transferees. At this time there were registered in the names of William Dixie Hoxie and Vinnie Brown Hoxie, his wife, 19,046 shares.

As a result of stock dividends of 100% on May 24, 1912, and May 17, 1923, these shares, 19,046 in number, were increased in number to 76,184 shares. This was the total number of shares in those two names at the date of Mr. Hoxie's death. Mrs. Hoxie paid no consideration for her interest in any of this stock.

This account has been referred to in this case as the two-name account.

On September 17, 1919, Mr. Hoxie was the owner of 41,130 shares of the stock of said company, which were registered solely in his name. On that day the stockholders of record received from the company the right to subscribe, at £2 per share, to one share of additional stock for each four shares which they then held. He thus became entitled to subscribe for 10,282 shares, and on October 30, 1919, he applied for the allotment to him, or his nominees, of such shares. The application form contained provisions under the terms of which the person entitled to the new shares could name the nominees to whom the new shares were to be issued, and the nominees could accept. Mr. Hoxie named William D. Hoxie, Vinnie B. Hoxie, his wife, and Isabelle Hoxie Middleton, his daughter, as the persons to whom the new shares should issue, and they, as the nominees named signed the form accepting the shares. These instruments—the application, the nomination and the acceptance —were executed in the State of New York.

There were registered in the so-called two-name account at this time, 38,092 shares, and William D. Hoxie and Vinnie B. Hoxie were entitled to subscribe for 9,523 additional shares by virtue of the issuance to stockholders of record on September 17, 1919, of rights to subscribe. These rights were exercised. The application and nomination were signed by William D. Hoxie and Vinnie B. Hoxie; William D. Hoxie, Vinnie B. Hoxie and Isabelle Hoxie Middleton were named as nominees and they all signed the acceptances on October 30, 1919, in the State of New York.

Both of these instruments were then forwarded to the company, and 19,805 shares of stock were issued and registered in the so-called three-name account on December 4, 1919. The purchase price for these shares was made up partly of dividends on the two-name account which, at the direction of William D. Hoxie and Vinnie B. Hoxie were so applied. In accordance with these directions a dividend on the two-name account payable in October, 1919, amounting to £2285.10.2 and another payable in May, 1920, amounting to £3248.5.7 were applied on the purchase price of these shares. The balance of the purchase price required for the purchase of these shares was contributed by the said William D. Hoxie.

Beyond his interests in the two-name and three-name account, at this time, William D. Hoxie was the sole owner and registered holder of 41,130 additional shares of stock in the said company. On September 1, 1920, he executed a deed in the same form as that used at the time the two-name account was created, by which he transferred these shares to himself, his wife, and daughter. This deed was executed by Mr. Hoxie, the transferor, and each of the transferees in the State of New York. It appears that the certificates which represented the shares thus transferred were then located in an office in the City of New York. Subsequently, this instrument was forwarded to Babcock & Wilcox, Limited, at London, England, and the said 41,130 shares were registered in the names of William Dixie Hoxie, Vinnie Brown Hoxie and Isabelle Hoxie Middleton, on October 16, 1920. This was the three-name account, and the total number of shares then registered in that account was 60,935. On May 17, 1923, the company paid a stock dividend of 100%, and, consequently, at that time, 60,935 addi-

tional shares were issued and registered in the three-name account. Thus there was a total of 121,870 shares in the names of William D. Hoxie, Vinnie Brown Hoxie and Isabelle Hoxie Middleton, on January 12, 1925, when William D. Hoxie died.

The plaintiffs claimed 2,856 of these shares should not be included in the estate of William D. Hoxie because they were purchased with Vinnie Brown Hoxie's shares of cash and stock dividends in the two-name account which had been applied to the purchase price of new shares upon the exercise of rights to subscribe on September 17, 1919. This claim was sustained by the Commissioner of Internal Revenue and the tax which had been assessed on account of the value of these shares was refunded. The certificate of overassessment issued by the commissioner shows that the overassessment was due in part "to the exclusion from the gross estate as determined of (a) the value of 2856 shares of Babcock & Wilcox, Ltd. stock, which the evidence now on file indicates were not purchased by the decedent."

It appears, therefore, that only 119,014 of the shares registered in the three-name account at the time of the death of William D. Hoxie are directly involved in this action and that neither Vinnie Brown Hoxie nor Isabelle Hoxie Middleton paid any consideration for the transfer to them of their interest in these shares.

The plaintiffs have presented evidence by oral testimony that at the time of the creation of the so-called two-name and three-name accounts, William D. Hoxie intended to make his wife and his wife and daughter immediate and equal owners with him of the shares of stock in said accounts, and the dividends therefrom, and that his wife and daughter understood that this was the effect of the deeds which they executed.

The dividends from the two-name and three-name accounts from May 19, 1921, to January 11, 1925, inclusive, were paid to the National Bank of Scotland, Ltd. under the directions of William D. Hoxie, and credited to his personal account. Vinnie Brown Hoxie joined with William D. Hoxie in ordering application of dividends for rights to subscribe, and there are entries on the dividend books of Babcock & Wilcox, Limited, dated May 17, 1921, directing payment thenceforth to William D. Hoxie. However, the plaintiffs maintain that the parties considered that the income from these said accounts belonged respectively to William D.

Hoxie and Vinnie Brown Hoxie, and William D. Hoxie, Vinnie Brown Hoxie and Isabelle Hoxie Middleton, and that the said dividends were so paid and credited to William D. Hoxie's account because of the low rates of exchange prevailing at that time. They further maintain that William D. Hoxie recognized his obligation to account for these said dividends and agreed to account to his wife and daughter for their shares of said dividends upon his return from his trip to South America in 1925, in the course of which he died.

Moreover, it appears that William D. Hoxie included in his income tax returns for years between 1913 and 1925, the year in which he died, one-half of the dividends received from the two-name account and one-third of the dividends received from the three-name account. Also it appears that Vinnie Brown Hoxie included in her income tax returns dividends on one-half of the two-name account and on one-third of the three-name account; and Isabelle Hoxie Middleton included in her income tax returns dividends on one-third of the three-name account. These returns were so made with the knowledge and approval of William D. Hoxie.

For many years before he died, William D. Hoxie was an executive of The Babcock & Wilcox Company, a corporation of the State of New Jersey, with offices in the City of New York, in the State of New York. He had been President of this corporation and shortly before his death he was Vice Chairman of the Board of Directors. This company was an affiliate of Babcock & Wilcox, Limited, the English company, with offices in London, England. Mr. Hoxie was also for many years a director of the latter company.

During the time the various stock transactions were carried out, the Articles of Association of Babcock & Wilcox, Limited, contained the following articles:

"6. * * * the shares shall be under the control of the Directors, who may allot or otherwise dispose of the same to such persons, on such terms and conditions, and at such times as the Directors think fit; * * *.

"7. The joint-holders of a share shall be severally as well as jointly liable for the payment of all instalments and calls due in respect of such share. The Company shall be entitled to treat the registered holder of any share as the absolute owner thereof, and accordingly shall not be bound to recognize

any equitable or other claim to or interest in such share on the part of any other person save as herein provided.

"8. * * * The certificates of shares registered in the names of two or more persons shall be delivered to the person first named on the Register."

"12. The executors or administrators of a deceased Member (not being one of several joint-holders) shall be the only persons recognized by the Company as having any title to the shares of stock registered in the name of such Member, and in the case of the death of any one or more of the joint-holders of any registered shares or registered stock, the survivors shall be the only persons recognized by the Company as having any title or interest in such shares or stock."

"62. If there be joint registered holders of any shares conferring a right to vote, the Member whose name stands first on the Register, and no other, shall be entitled to vote in respect of such shares, but the other or others of the joint holders shall be entitled to be present at the General Meeting."

"112. In case several persons are registered as the joint-holders of any share or stock, any one of such persons may give effectual receipts for all dividends and payments on account of dividends in respect of such share or stock."

"127. All notices shall, with respect to any registered shares to which persons are jointly entitled, be given to whichever of such persons is named first in the Register, and notice so given shall be sufficient notice to all the holders of such shares."

In his capacity as President of The Babcock & Wilcox Company, and Vice Chairman of the Board of Directors, and as a director of Babcock & Wilcox, Ltd., and as a participant in the litigation which arose during the administration of his uncle's estate, William D. Hoxie was familiar with the terms of these Articles of Association.

He executed his will on January 29, 1924. The fifth clause therein recites that: "Fifth: At the date of this Will I am a joint owner with my wife, Lavinia B. Hoxie, of certain shares of stock in Babcock and Wilcox, Ltd., a corporation organized under the laws of Great Britain, such shares having a par value of one pound sterling each. If at the time of my death, having survived my wife, I am sole owner of such shares, I give to my son-in-law, Cornelius W. Middleton, Twenty Thousand (20,000) of the ordinary shares of that corporation."

By the provisions of the Eighth Paragraph of his will, William D. Hoxie made bequests to certain charitable organizations named therein in the total sum of $142,000. Paragraph Sixteenth of the will provided as follows: "Sixteenth: If I should be survived by my wife or by my daughter or by any descendant or descendants, then, unless my estate at the time of my death after the payment of all my debts, funeral expenses and expenses of administration, and inheritance, transfer or succession taxes, whether imposed by the laws of the United States or of any state, should be equal to or exceed four times the sum total of all the legacies contained in paragraphs numbered, Second, Third, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, and Twelth; then all of said legacies, whether absolute or in trust shall be reduced pro rata until they shall be of such amounts that my said estate after the payment of my debts, funeral expenses, expenses of administration, and taxes as above stated shall be at least equal to four times the sum total of said legacies."

The executors on April 28, 1925, paid $35,500 on account of the charitable legacies which totaled $142,000, and on November 21, 1927, with the consent of the residuary legatees paid the balance of said legacies of $106,500.

The plaintiffs claimed, in their original return, the full amount of these charitable legacies as a deduction from the gross estate. Only $35,500 of the total amount of these legacies had been paid at the time said return was made, and the Collector of Internal Revenue, recommended that a deduction be allowed only in that sum. The Commissioner of Internal Revenue determined that in making the calculation required by Paragraph Sixteenth of the will of William D. Hoxie no part of the value of the stock of Babcock & Wilcox, Limited, should be included in the gross estate of the deceased. Accordingly, he fixed the amount deductible for charitable legacies at $58,122.79 and calculated the deficiency assessment on this basis. The deficiency assessment was paid under protest, and the executors' claim for refund was based in part on the refusal of the Commissioner of Internal Revenue to allow a deduction for charitable legacies in excess of $58,122.79.

This portion of the claim for refund was disallowed ·except as to, the extent of a small increase in the amount deductible for charitable legacies which resulted from a recomputation of the portion thereof which was 'payable according to the reasoning of the Commissioner. This was made necessary by the allowance of certain other portions of the claims for refund.

The plaintiffs allege in their declaration that the refusal to allow the deduction of the full amount of the charitable legacies in the sum of $142,000 was erroneous and illegal. They maintain that these legacies were payable in full under the provisions of the testator's will, notwithstanding the said Sixteenth clause of the will; that they were paid in full; and should have been allowed in full as a deduction.

The plaintiffs, as executors of the will of William D. Hoxie, deceased, brought a petition on September 26,. 1932, in the .Probate Court of the Town of Westerly in the State of Rhode Island, for a construction of the provisions of said will relating to the charitable legacies. Notice was given to the representatives of the United States as to the time and place of hearing on this petition. They did not enter an appearance in said proceedings.

Upon consideration thereof, the said Probate Court, on October 18, 1932, ordered, adjudged, and decreed: "That all of the legacies in the will of said William D. Hoxie, referred to in the petition, should be paid in full by. the executors and should not be reduced under the provisions of the Sixteenth Clause of said will." No appeal was taken from this decree.

The plaintiffs contend that two distinct claims form the basis of their cause of action. The first is that the. Commissioner of Internal Revenue erroneously included in the gross estate of the said William D. Hoxie, deceased, the entire value of 76,184 shares of stock of Babcock & Wilcox, Limited, which stood at the time of his death in the names of himself and his wife, Vinnie Brown Hoxie, in the so-called two-name account, and the entire value of 119,014 shares ,of stock of the same company which stood at the time of his death in the names of himself, his said wife, and his daughter, the said Isabelle Hoxie Middleton, in the so-called three-name account.

The plaintiffs maintain that these shares in each of the said accounts were owned by the deceased and his wife, and by the deceased and his wife and daughter, respectively, as tenants-in-common. They further maintain that only one-half of the value of the shares of stock in the two-name account and one-third of the value of the shares of stock in the three-name account are taxable as a portion of the estate of the deceased at the time of his death. They allege that this is clearly set forth in Paragraph 5 of the claim for refund and in sub-paragraph (e) of Paragraph 6 of the first count of their declaration.

The second claim is that the Commissioner of Internal Revenue erroneously refused to allow as a deduction from the gross estate of the deceased the entire amount of $142,000 of charitable legacies bequeathed by Paragraph Eighth of the will and paid out of the estate of the deceased. They allege that this is set forth in Paragraph 1 of the claim for refund, and in sub-paragraph (a) of Paragraph 6 of the first count of their declaration. A deduction of these legacies in the sum of $58,122.79 only was allowed. The plaintiffs contend that the entire amount of these legacies in the sum of $142,000.00 should have been allowed as a deduction.

The provisions of the statute herein involved are as follows:

"Revenue Act of 1924, c. 234, 43 Stat. 253, 304, 305:

"Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or· personal, tangible or intangible, wherever situated—

"(a) To the extent of the interest therein of the decedent at the time of his death which after his death is subject to the payment of the charges against his estate and the expenses of its administration and is subject to distribution as part of his estate;

\* \* \* \* \* \*

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, \* \* \* intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for a fair consideration in money or money's worth. \* \* \*

\* \* \* \* \* \*

"(e) To the extent of the interest therein held as joint tenants by the decedent

and any other person, or as tenants by the entirety by the decedent and spouse, or deposited, with any person carrying on the banking business, in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than a fair consideration in money or money's worth: Provided, That where such property or any part thereof, or part of the consideration with which such property was acquired, is shown to have been at any time acquired by such other person from the decedent for less than a fair consideration in money or money's worth, there shall be excepted only such part of the value of such property as is proportionate to the consideration furnished by such other person: * * *

* * * * *

"(h) Subdivisions (b), (c), (d), (e), (f), and (g) of this section shall apply to the transfers, trusts, estates, interests, rights, powers, and relinquishment of powers, as severally enumerated and described therein, whether made, created, arising, existing, exercised, or relinquished before or after the enactment of this Act.

"Sec. 303. For the purpose of the tax the value of the net estate shall be determined—

"(a) In the case of a resident, by deducting from the value of the gross estate—

* * * * * *

"(3) The amount of all bequests, legacies, devises, or transfers, except bona fide sales for a fair consideration in money or money's worth, in contemplation of or intended to take effect in possession or enjoyment at or after the decedent's death, to or for the use of the United States, any State, Territory, any political subdivision thereof, or the District of Columbia, for exclusively public purposes, or to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual, or to a trustee or trustees, or a fraternal society, order, or association, operating under the lodge system, but only if such contributions or gifts are to be used by such trustee or trustees, or by such fraternal society, order, or association, exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals."

The plaintiffs are relying solely upon those parts of the claim for refund and of the declaration which they maintain support their claim, that the stock in question was held in tenancy in common. They have abandoned all other grounds of recovery.

The facts and issues are thus presented for determination. The parties hereto have made motions for judgment.

 The claim for refund was filed on the 20th day of February, 1928, in the office of the Commissioner of Internal Revenue, in accordance with the provisions of the statute in force in 1928, namely, Revised Statutes, Section 3226, as amended by the Act of February 26, 1926, Chapter 27, Section 1113(a), 44 Stat. 116, 26 U.S.C.A. § 156 (superseded by 26 U.S.C.A. §§ 1672–1673), and of the regulations of the Secretary of the Treasury established in pursuance thereof. It contains the following paragraph:

"5. The inclusion in the gross estate of the decedent for the purpose of the determination of the estate tax due under the Revenue Act of 1924 of the value of more than one-half of the shares of Babcock & Wilcox, Ltd., held in account No. 1696 (the so-called two-name account) and of the value of more than one-third of the shares of Babcock & Wilcox, Ltd. held in account No. 5215, (the so-called three-name account), was erroneous, illegal, and in violation of Section 302 of the Revenue Act of 1924, and of the Fifth Amendment to the Constitution of the United States, inasmuch as one-half of the shares in account No. 1696 (the so-called two-name account), and two-thirds of the shares in account numbered 5215 (the so-called three-name account) were not the property of the decedent at the time of his death, nor did any interest therein pass at the date of his death, nor was there any transfer of them which would subject the value of such shares to the Federal Estate Tax as a part of the decedent's estate."

Paragraph 6, sub-division (e) of plaintiff's declaration contains the same language. The words "jointly owned" and "jointly held" do appear in the declaration, but do not appear in the claim for refund. Neither in the claim for refund nor in the

declaration is there any allegation that the stock was held in joint tenancy. "Jointly owned", and "jointly held" connote joint ownership. Joint ownership may mean joint tenancy, but not that alone; it may mean tenancy in common. In re Huggins' Estate, 96 N.J.Eq. 275, 125 A. 27; Haven v. Haven, 181 Mass. 573, 64 N.E. 410; Mustain v. Gardner, 203 Ill. 284, 67 N.E. 779.

The claim of the plaintiffs is that the ownership in the above entitled accounts is based on a tenancy in common. Clearly this claim is within the terms employed in paragraph 5 of the claim for refund, and the language there used forms a legal foundation for the allegations in paragraph 6, sub-division (e) of the plaintiff's declaration. The ground urged in the declaration is the same as that specified in the claim for refund. Briefs and correspondence bearing on the claim of the tenancy in common and the basis for the same were filed with the Commissioner and became a part of the claim. The Commissioner was not misled or deceived as to the claim made. Bonwit Teller & Co. v. United States, 283 U.S. 258, 51 S.Ct. 395, 75 L.Ed. 1018; United States v. Memphis Cotton Oil Co., 288 U.S. 62, 53 S.Ct. 278, 77 L.Ed. 619; Reynolds v. Durey, D.C., 9 F.Supp. 553.

The three deeds of the shares of stock which William D. Hoxie owned or was entitled to have transferred to him were executed in the State of New York. Certificates describing these deeds were located in the City of New York at the same time. The two applications for allotment of shares were executed in New York. The law of the place where these instruments were executed governs.

The New York statute (New York Real Property Law [Consol.Laws, c. 50] § 66) which was in effect at the time of the transfers of the shares of stock in the present case is as follows:

"When estate in common; when in joint tenancy.

"Every estate granted or devised to two or more persons in their own right shall be a tenancy in common, unless expressly declared to be in joint tenancy; but every estate, vested in executors or trustees, as such, shall be held by them in joint tenancy. This section shall apply as well to estates already created or vested as to estates hereafter granted or devised."

The case entitled Helvering, Commissioner of Internal Revenue, v. Miller, 2 Cir., 75 F.2d 474, construed that statute under a somewhat similar state of facts. There the same type of instrument, identical in form, was executed by the husband and wife and six children, and the court held that the eight transferees became tenants in common immediately upon the execution of the deed. The court said (page 475): "For almost a century and a half it has been the law of New York (Real Property Law § 66), that all estates in real property granted to two or more are 'a tenancy in common, unless expressly declared to be in joint tenancy.' Not only have the New York courts extended this to personal property, but they have shown every disposition to insist literally upon an 'express declaration'."

In addition thereto, and in further support of the claim of the plaintiffs that the tenancy in the instant case is a tenancy in common and not a joint tenancy, it is in evidence that William D. Hoxie intended to create in his wife and daughter an immediate and equal ownership with himself in the shares in question, and the dividends therefrom, and that the shares and dividends were so received.

It is uncontradicted that each of the parties made a return in their income tax returns of their respective interests in the income from said stock. While certain cash dividends were placed in the name of William D. Hoxie, it is certain that the parties expected a proper accounting to be made of these funds, but the death of Mr. Hoxie prevented it. The action of Mrs. Hoxie and Mrs. Middleton in taking unto themselves the stock in question, and no return being made of it in the inventory of the estate of Mr. Hoxie in the Probate Court in the Town of Westerly, are facts not sufficient to outweigh the force of the other facts in the case. It is suggested that the executors never had the stock, and, accordingly, did not make a return of it in the inventory, and that in any event Mrs. Hoxie and Mrs. Middleton were to get it anyway.

Whatever consideration may be given to such an explanation of the actions of Mrs. Hoxie and Mrs. Middleton in receiving the stock in this manner, it does not sufficiently contradict the other facts. It does not demonstrate that there was no intention to create equal and immediate ownership at the time of the creation of

the two-name and three-name accounts. It does not reveal that Mrs. Hoxie and Mrs. Middleton did not enter into the transactions with the thought that they were receiving equal and immediate ownership in the stock with Mr. Hoxie. Their action in taking the stock as they did cannot affect the acts and declarations at the time of the original transactions. The language used by William D. Hoxie in the Fifth Clause of his will is subject to the same interpretation and the same limitation.

However, a dismissal of a consideration of such facts becomes imperative. No legal effect is to be given them because the statute requires an "express declaration" to create a joint tenancy. It is a "peremptory command" of the statute. Helvering v. Miller, supra.

The testimony of Mrs. Hoxie, Mrs. Middleton and Mr. Sheldrick, the secretary of Mr. Hoxie, that his wife and his wife and daughter were to be immediate and equal owners with Mr. Hoxie of the stock in question, supports this. Because of his knowledge of the English law, the cost of administration of estates in England, and his familiarity with the administration of the estate of his uncle, it might be inferred that Mr. Hoxie intended his wife and daughter to be joint tenants with him in the shares in suit.

The by-laws of the company, too, might support such an inference. But the reasonableness of such inference has no place here because of the provisions of the statute.

"But for the peremptory command of the statute, and as mere inference, it would be reasonable to say that they intended their ownership to be whatever the English law imposed; that they accepted this along with their relations with the company, which they had to accept anyway. But that conclusion is out of the case; they meant to be co-owners at least until the issue of the new shares." Helvering v. Miller, supra.

Moreover, the Commissioner of Internal Revenue has sustained the claim that 2856 of these shares were purchased with Mrs. Hoxie's share of dividends in the two-name account, which had been applied to the purchase price of the new shares upon the exercise of rights to subscribe on September 16, 1919. He refunded the tax which had been assessed on account of the value of these shares. He stated in the certificate of over-assessment that the evidence on

file indicated that these 2856 shares were not purchased by the decedent. The position of the Commissioner could have been equally consistent with the claim of joint tenancy and the claim of tenancy in common. But, where it is coupled with the positive, affirmative declaration of "equal and immediate ownership", and with the requirement of the New York statute with its language of "expressly declared", it takes on a persuasive force establishing a tenancy in common. And this is particularly true when it appears that the Commissioner allowed exemption of the 2856 shares which were purchased partly with cash dividends and partly with stock dividends of Mrs. Hoxie, and which additional shares were issued in the name of the parties in the same form and manner as the other allotted shares.

The cases entitled Matter of Albrecht, 136 N.Y. 91, 32 N.E. 632, 18 L.R.A. 329, 32 Am.St.Rep. 700, and In re Kane's Estate, 246 N.Y. 498, 159 N.E. 410, do not apply.

The facts and the law convincingly establish a tenancy in common in all the stock affected by the deeds and instruments executed in New York.

In considering the transfer of the 2000 shares which increased through stock dividends to 8000 shares, attention must be given to the Rhode Island statute. The deed of transfer was executed in that state.

The language of the Rhode Island statute, which is Chapter 296, Section 1, General Laws of Rhode Island 1923, is as follows:

"All gifts, feoffments, grants, conveyances, devises or legacies, of real or personal estate, which shall be made to two or more persons, whether they be husband and wife or otherwise, shall be deemed to create a tenancy in common and not a joint tenancy, unless it be declared that the tenancy is to be joint, or that the same is to such persons and the survivors or survivor of them, or to them as trustees or executors, or unless the intention manifestly appears that such persons shall take as joint tenants and not as tenants in common."

There is no decision by the Supreme Court of the State of Rhode Island which says that the command of the statute is "peremptory". But the statute does say that the tenancy shall be deemed to be a tenancy in common and not a joint tenancy unless it is declared to be joint or is

to the survivor or survivors, or unless the intention manifestly appears that the persons are to take as joint tenants and not as tenants in common.

█ The deed of transfer executed in Rhode Island contains no declaration that the tenancy was to be joint, and a manifest intention that the parties were to take as joint tenants and not as tenants in common does not appear. The language therein does not bear the interpretation of a joint tenancy. Construed in the light of the statute it means a tenancy in common. The facts, outside of the instrument itself, should they be pursued to find a required manifest intention to create a joint tenancy, do not reveal such a tenancy. The analysis of the facts which was made in construing the effect of the New York instruments clearly demonstrates that the intention was to create a tenancy in common. The case entitled Washington Trust Co. v. Thomas et al., R. I.1919, 107 A. 203, is distinguishable from the present case. Under the facts of that case it was clear what was the intention of the parties. The facts are not the same in both cases.

Here, too, as under the provision of the New York instrument, a tenancy in common has been created. It necessarily follows that one-half of the two-name account and one-third of the three-name account only are taxable.

In considering whether the full amount of the charitable legacies may be deducted, the question is were the executors required under the terms of the will of William D. Hoxie to pay them in full.

Chapter 358, Section 4 of the General Laws of Rhode Island, 1923, recites that:

"Probate courts may determine all questions as to payments of legacies by executors and administrators with the will annexed, and may allow such payments in the accounts of executors and administrators."

Chapter 369, Section 15, of the General Laws of Rhode Island, 1923, is as follows:

"Whenever any question arises as to the identity of a legatee, or the construction or the payment and satisfaction of any legacy, the probate court, upon petition setting out such questions, after notice by citation to all known parties, and any additional notice the court may direct, and after hearing thereon, may determine the same and enter its order accordingly."

█ Authority under this statute is given to Probate Courts to determine the identity of a legatee and the construction and payment or satisfaction of any legacy. This is a question of local law and is to be determined by the state courts of competent jurisdiction.

The effect of such a decision upon the right of the United States to collect certain taxes is not determinative of the question. Such a decision from such a court is controlling no matter what the effect of it is upon the taxing powers of the United States. Blair, Petitioner, v. Commissioner of Internal Revenue, 300 U.S. 5, 57 S. Ct. 330, 81 L.Ed. 465; Uterhart v. United States, 240 U.S. 598, 36 S.Ct. 417, 60 L.Ed. 819; McCaughn, Internal Revenue Collector, v. Girard Trust Co., 3 Cir., 19 F.2d 218.

█ The decree of the Probate Court of the Town of Westerly in the State of Rhode Island, reads as follows: "That all of the legacies in the will of said William D. Hoxie, referred to in the petition, should be paid in full by the executors and should not be reduced under the provisions of the Sixteenth clause of said will." It was entered in a case brought under a statute which provided for such a procedure in probate courts. No appearance had been entered by the United States after notice had been given to its representatives. No appeal was taken. The court was one of competent jurisdiction; the question was one of local law and was one subject to the law of the State of Rhode Island. To exercise federal jurisdiction here and ignore the validity of such decree is to disregard a decree of a court of competent jurisdiction in a matter of local law, and to exercise unwarrantedly federal jurisdiction.

The charitable legacies have been paid. A claim for deduction is set forth in paragraph 1 of the claim for refund, and in sub-paragraph (a) of paragraph 6 of the first count of the plaintiff's declaration. The entire amount thereon should have been allowed as a deduction.

The motion for judgment of the defendant is denied. The motion for judgment of the plaintiffs is granted. By agreement of the parties hereto judgment to be entered will be stipulated by the parties and submitted to the court for approval.