PAGE, Collector of Internal Revenue, v.
HOXIE et al.

No. 3433.

Circuit Court of Appeals, First Circuit.
June 13, 1939.

John A. Gage, Sp. Asst. to the Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., on the brief), for appellant.

Harold B. Tanner, of Providence, R. I. (Tillinghast, Collins & Tanner and James C. Collins, all of Providence, R. I., Ferdinand Tannenbaum, of New York City, and Colin MacR. Makepeace, of Providence, R. I., on the brief), for appellees.

Before WILSON, Circuit Judge, and PETERS and SWEENEY, District Judges.

PETERS, District Judge.

The Collector of Internal Revenue appeals from a judgment against him for the amount of certain estate taxes held by the District Court to have been illegally collected. The facts are fully set forth in the opinion of the District Court, reported in Hoxie et al. v. Page, 23 F.Supp. 905. The case turns upon whether certain shares of stock in an English company, owned, in one instance, by the decedent, William D. Hoxie and his wife, and, in another, by the decedent and his wife and daughter, were held as tenants in common, or as joint tenants with rights of survivorship.

There are two separate blocks of shares involved, one of 76,184, standing at the time of the death of the decedent in his name and that of his wife,—referred to as the "two-name account,"—and another of 119,014 standing at the time of the decedent's death in his name and that of his wife and daughter. This stock was all in Babcock & Wilcox, Limited, of London. Instruments of transfer under which the parties obtained title were executed in the case of some shares in New York and of others in Rhode Island. It is undoubted that the laws of those States govern the decision of the questions raised by the respective transactions, and that we should look

to the courts of those States for authoritative expressions as to their own laws. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

The shares were transferable only by a separate instrument or deed of transfer in the form prescribed by the company. This contained the following clause: "To hold unto the said transferee(s), (their) executors, administrators and assigns, subject to the several conditions of which we held the same immediately before the execution hereof; and the said transferee(s) do hereby agree to accept and take the said stock subject to the conditions aforesaid."

Title to the shares standing in the names of Mr. Hoxie and his wife passed to them by deeds in the form above referred to, executed as to some shares in New York and others in Rhode Island. The number of shares thus passing by deed was less than the number above mentioned, which was increased to that figure by stock dividends. The original shares were all shares Mr. Hoxie was entitled to either under a will of a relative or by purchase, and Mrs. Hoxie paid nothing for the interest she acquired by the deeds.

Title to the shares standing in the "three-name account",—that of Mr. Hoxie and his wife and daughter,—passed to them, in part by a deed of transfer directly from Mr. Hoxie to himself and his wife and daughter, in the form above referred to, executed in New York, and in part by the exercising of stock rights held by Mr. Hoxie and his wife by virtue of their "two-name" ownership above mentioned, and exercised by them in favor of themselves and their daughter. The applications for the stock, nominations of the transferees and the acceptances were all made and signed in New York.

Stock dividends brought this "three-name account" ownership up to 121,870, but the Commissioner of Internal Revenue recognized the individual right of Mrs. Hoxie to 2,856 of these shares, which were purchased with her proportional share of cash and stock dividends in the "two-name account", and which should be deducted from 121,870, leaving, as stated, in the "three-name account" in question here, 119,014.

In this case also neither the wife nor the daughter paid any consideration for the original transfers to them.

The Collector of Internal Revenue included in his valuation of the gross estate of the decedent the entire value of both blocks of stock on the ground that the ownership was joint and therefore taxable under the Revenue Act of 1924, c. 234, Sections 302 and 303, 43 Stat. 304, 305. The District Court, however, decided that a tenancy in common was created in the shares under the New York and Rhode Island statutes respectively, and by the acts of the persons involved, and that one-half of the "two-name account" and one-third of the "three-name account", only, was subject to the estate tax.

If the tenancy was in common it is clear that the judgment of the District Court should be sustained.

The New York statute, Real Property Law § 66, Consol.Laws N.Y. c. 50, provides that "Every estate granted or devised to two or more persons in their own right shall be a tenancy in common, unless expressly declared to be in joint tenancy."

The statute applies to both real and personal property. Judge Learned Hand in the case of Helvering v. Miller, 2 Cir., 75 F.2d 474, 475, says:

"For almost a century and a half it has been the law of New York (Real Property Law, § 66), that all estates in real property granted to two or more are 'a tenancy in common, unless expressly declared to be in joint tenancy.' Not only have the New York courts extended this to personal property, but they have shown every disposition to insist literally upon an 'express declaration.' "

The above case of Helvering v. Miller, is relied upon as an authority for the position of the District Court. In that case, as here, the shares were in an English company having the same provisions relative to the transfer of its shares and the relations between the company and the stockholder as in the instant case. It was said in the opinion in the Miller case, which was an appeal from an order of the Board of Tax Appeals, that there was there an attempt to charge the executors of Miller with the full value of certain shares of stock in an English company. The court said:

"The case hinges upon whether the shares were held jointly or in common; if jointly, their whole value was part of Miller's estate when he died (section 302(e) of the Act of 1926, 26 U.S.C.A. § 1094(e) [now 26 U.S.C.A. § 411(e)]); if in common, the estate comprised only the value of his aliquot part. Miller had originally held the

shares singly, but in 1923 for some undisclosed reason he decided to transfer them to himself, his wife and his six children. To that end he and they executed a deed on June eighteenth of that year, which recited that in consideration of ten shillings, which was in fact never paid he did 'bargain, sell, assign and transfer to the said Transferees,' all the shares, 'subject to the several conditions on which I held the same * * * and we, the said Transferees do hereby agree to accept and take the said shares subject to the conditions aforesaid.'"

. The court refers to the fact that the English company did not recognize anything but a joint ownership.

"Thus when Miller died the company could, and probably was bound to, treat his wife and children as the sole owners; similarly when the wife died, and so on. But though this be true, it does not follow that as between themselves the eight transferees were joint-owners; that is a matter of their intent, if that intent is manifested plainly enough. * * * The transferees became owners of the shares eo instante, and they held not jointly, but in common; of the last there cannot be a shadow of doubt. English equity, long before the first of the New York statutes, had already come to look with disfavor upon joint ownership, and made shift to avoid it whenever it could find an excuse."

The deeds of transfer involved here "bargain, sell, assign and transfer" to the grantees certain shares, without specifying any particular tenancy, and the other instruments simply transfer and vest in the nominees the right to receive certain shares, without indicating the nature of the tenancy. In each case the transferees and nominees accepted the shares subject to the specified conditions which involved acceptance of the articles of association of the Company, to be sure, but by that the character of the tenancy was not changed as among themselves. Helvering v. Miller, supra.

While in the ordinary case a grant to two or more persons, without more, creates a tenancy in common, such an effect may be avoided by agreement of all parties. As said in the Miller case,

"That is a matter of their intent, if that intent is manifested plainly enough."

In the instant case, in addition to showing valid, completed gifts inter vivos,

by showing delivery and acceptance of instruments of transfer, which, on their face, created tenancies in common, the plaintiffs, appellees here, executors of the will of Mr. Hoxie, presented evidence by oral testimony that Mr. Hoxie intended to make his wife, in one case, and his wife and his daughter in the other, immediate and equal owners with him of the shares of stock in the two accounts, together with the dividends therefrom, and that his wife and daughter participated in that intention and all understood that such was the effect of the instruments.

The oral testimony was objected to by the defendant, appellant, and is the subject of an exception.

It is asserted in support of the exception that the oral testimony was contrary to stipulations of facts made for the purposes of the trial and introduced, over objection, after the case had been submitted on questions of law. The Government's understanding on this point did not exactly coincide with that of the District Judge, but, regardless of that, the reception of the evidence was well within his discretion in the handling of the trial.

Counsel for the Government strongly urge that the transfers of shares in New York did not create a tenancy in common under the law of that State, but only an estate with right of survivorship, particularly in the case of husband and wife, and suggest that certain New York reported cases, relied upon by counsel, may have escaped the attention of Judge Hand when he wrote the opinion in Helvering v. Miller, supra. The principal case referred to is Matter of Kane's Estate 246 N.Y. 498, 504, 159 N.E. 410, 412; but an examination of that case leads us to the conclusion that it is not applicable.

In the Kane Case, Chief Judge Cardozo held that where Kane had caused certain shares of stock, paid for wholly by himself, to be issued in the names of himself and his wife;

"The presumption is that he did this with the intention that upon his death, the title to the shares, if still in the joint names, should pass to the survivor. West v. McCullough, 123 App.Div. 846, 108 N.Y.S. 493; Id., 194 N.Y. 518, 87 N.E. 1130; Matter of Kaupper, 141 App.Div. 54, 57, 125 N.Y.S. 878; Id., 201 N.Y. 534, 94 N.E. 1095; Sanford v. Sanford, 45 N.Y. 723. The presumption would not exist in the absence of the relation of husband and wife. It would

not exist even then, in the absence of evidence that the shares had been paid for by the husband solely. Matter of Blumenthal's Estate, 236 N.Y. 448, 141 N.E. 911, 30 A. L.R. 901."

Upon reargument of the same case (247 N.Y. 219, 160 N.E. 17) Chief Judge Cardozo referred further to the nature of the estate created, saying:

"In the case at hand the interest acquired by the wife through the act of the husband in placing the shares in the joint names was not an interest as joint owner. She did not acquire a present title (except a merely formal one) to a half, or any other part. Whatever title came to her was dependent upon his death. As we pointed out in our opinion: 'A husband who puts the title to a chose in action in the name of himself and his wife jointly does not create a joint tenancy in the strict sense. The right of survivorship attaches if title is retained till his death, but he may defeat it altogether if he disposes of the property by conveyance taking effect during his life. Matter of Albrecht, 136 N.Y. 91, 95, 32 N. E. 632, 18 L.R.A. 329, 32 Am.St.Rep. 700; Wetherow v. Lord, 41 App.Div. 413, 417, 58 N.Y.S. 778.'"

In a later transaction involving all the Kane shares, individual and otherwise, when Kane caused a new certificate to be made out in the name of himself and his wife, he told her of his action and of his purpose that the shares should pass to her as his survivor without will or otherwise. This was concurred in and approved by her. As to that transaction it was not necessary to rely upon a presumption for the benefit of the wife, as the intention was apparent and its force was recognized in the language of the opinion:

"At this point it is enough to say that, without recourse to presumption, the existence of such a title in January, 1923, is made out, at least for the future, by declarations of intention. The wife took the whole upon the death of the husband with the shares still in the joint names."

That any such presumption as mentioned in favor of the wife disappears in the presence of a contrary intention of the parties is also shown in other cases referred to in the Kane case.

In the case of In re Kaupper, 141 App. Div. 54, 125 N.Y.S. 878, 880, Id., 201 N.Y. 534, 94 N.E. 1095, the court said:

"Conceding that the law does not recognize such a thing as tenancy by the entirety in personal property * * * it still does recognize a joint tenancy in personal property, which may be created if the parties so intend, irrespective of whether the tenants be husband and wife, and in such case the right of survivorship does exist. West v. McCullough, 123 App.Div. 846, 108 N.Y.S. 493 * * *. In the absence of direct evidence as to intent, the law deals with presumptions. * *. *"

The cases cited in support of the Government's contention do not show a situation such as here, where there is no room for the use of a presumption for the benefit of the wife, to increase her rights over those of a stranger. This is the case of a completed gift inter vivos by delivery of deeds which, under the New York statute, operated on their face to create an absolute ownership in the grantees in common, a tenancy which it is shown the parties intended to create. Nothing in the New York decisions denies them the right to do so.

It will hardly be contended that if, in the case of the two-name or husband-and-wife account, there was such a tenancy it would be otherwise where there were other grantees also.

The above refers to the transactions in New York.

It appears that the decedent, Mr. Hoxie, after the purchase of 2,000 of the above-mentioned shares, made and executed in Rhode Island a deed of the same tenor as above mentioned, transferring them to his wife and himself.

The pertinent statute of Rhode Island, Gen.Laws R.I.1938, c. 431, § 1, is as follows:

"All gifts, feoffments, grants, conveyances, devises or legacies, of real or personal estate, which shall be made to 2 or more persons, whether they be husband and wife or otherwise, shall be deemed to create a tenancy in common and not a joint tenancy, unless it be declared that the tenancy is to be joint, or that the same is to such persons and the survivors or survivor of them, or to them as trustees or executors, or unless the intention manifestly appears that such persons shall take as joint tenants and not as tenants in common."

There is no showing that the parties intended, by their action in Rhode Island, a result other than would be the normal effect of the statute of that State, or other than they intended in New York.

In the case of Washington Trust Company v. Thomas et al., R.I., 1919, 107 A. 203, cited and relied upon by counsel for the defendant, appellant, it appears that the parties intended a survivorship estate to be created. The intention sufficiently appears to come within the exception of the statute. In the instant case, so far as any intention is shown, it is to the contrary and coincides with the requirement of the statute. The statute expressly applies to husband and wife and nothing is shown that would prevent its normal operation, and, like the situation in the case of the New York instruments, the conclusion of the District Court that the instruments of transfer created tenancies in common is justified.

The judgment of the District Court is affirmed.