In the Matter of the Estate of MARGARET C. FALCONER, Deceased.

Surrogate's Court, New York County, August 10, 1944.

*Harold L. Herrick* for Chase. National Bank of the City of New York, executor, petitioner.

*Hamilton McInnes* for State Tax Commission, respondent.

FOLEY, S. This is an application for reargument of my prior decision on the appeal from the *pro forma* order fixing the estate tax on the appraiser's report (N. Y. L. J., Jan. 25, 1944, p. 317, col. 1). In that decision I sustained the executor's contention that the appraiser had erroneously included in the gross taxable estate the corpus of an *inter vivos* trust valued at $173,414.86. At the same time, I directed that there should be eliminated as a deduction from the gross estate the sum of $67,159, the value of an annuity to Louise F. Falconer, a daughter of the decedent's son, Bruce. Reargument was had and new briefs submitted by counsel. No reason whatsoever has been shown to justify any modification of my prior decision.

The executor now contends that the elimination of the deduction was erroneous upon two grounds: First, that the obligation to pay the annuity was the primary and ultimate obligation of the testatrix and not of her son, Bruce; and second, that the court was without jurisdiction to direct the elimination of the deduction because the State Tax Commission did not appeal from the *pro forma* order.

These contentions are clearly unsound and both are overruled.

The executor's own proof shows beyond any possibility of doubt that the primary obligation for the payment of the annuity rested upon Bruce, the child's father, and that it was never intended that the general estate of the testatrix should be subjected to its payment. In 1927, the testatrix, her son Bruce and her daughter, received a favorable offer for the sale and rental of certain parcels of real estate in this city in which each owned an undivided one-third interest. The negotiations

were halted when Bruce's wife, Cora, refused to release her dower rights in his one-third interest in the property. Cora had brought an action in the Supreme Court, New York County, against Bruce for a separation and for separate maintenance for herself and their infant daughter, Louise Faith Falconer. In return for the release of her dower rights she demanded the payment of approximately $28,000 in a lump sum and $3,640 for her life or "until her remarriage, and thereafter to her daughter Louise during the latter's life." Bruce refused to meet these terms.

The testatrix, being interested in the proposed transfer of the Falconer properties, suggested that she would make the required payments if Bruce would accept his wife's terms. Bruce rejected the suggestion. The reason for this rejection, as appears from the affidavits of Bruce's attorney, of Bruce himself and of his sister, was that Bruce felt that his mother's mere promise was not security enough. He thought that his mother ought to agree not to change her will, in which she had left him one half of her estate, and that she ought to set up a trust fund "in which she should make available to him funds sufficient to make the payments to Cora and his daughter, should he decide to meet his wife's demands."

Mrs. Falconer accepted the conditions as stipulated by Bruce and on January 7, 1928, entered into an agreement with him. This instrument provided that if Bruce would execute the separation agreement, the testatrix would meet "the payments of principal and income required by said agreement to be made by" Bruce. According to Bruce's attorney, it was decided that it "would be better to work out the details of the trust agreement" after the real estate deal was closed.

On January 24, 1928, Bruce entered into the separation agreement with his wife. In it, Cora released all her rights, not only in Bruce's one-third interest in the Falconer properties, but in all of her husband's property, real and personal. Bruce agreed to pay his wife a flat sum of approximately $28,000 and bound himself to pay her $3,640 per year until her death or remarriage and thereafter to pay a similar amount to his daughter Louise "for the education, maintenance and support of said infant daughter so long as she lives."

On April 4, 1928, the testatrix executed the trust agreement required by Bruce. Reserving a life interest to herself, she agreed that upon her death the trust fund should be divided into two parts and that one part should be paid over to Bruce, if living, and otherwise as he should by will appoint. The other

part was to be held in trust for her daughter for life, if living, with remainder to Bruce, if he was then living, or as he should by will appoint. It was further provided that upon her death, Bruce should have the right to elect that there be paid over to him, before any division of the fund, an amount sufficient to produce the annuity of $3,640 referred to in the agreement of January 7, 1928.

On the same day that she executed the trust agreement, the testatrix changed her will to conform exactly to the dispositions made in the trust instrument. In paragraph " Fifth " of the codicil, she specifically ratified and confirmed both the trust indenture and the prior agreement of January 7, 1928.

The stipulated payments were made to Bruce's wife until her death in September, 1934. Thereafter, the annuity of $3,640 was paid in accordance with the terms of the separation agreement for the " education, maintenance and support " of Bruce's daughter.

The evidence thus overwhelmingly establishes that Bruce was primarily responsible for the payments under the separation agreement and that the trust fund stood merely as security for his mother's promise to him to meet the payments as they came due. The obligation to support his wife and child remained his. Upon the evidence here submitted, no other conclusion is possible and I reaffirm my prior decision upon this point.

Upon no imaginable theory could any other result be reached. The allowance of the deduction by the appraiser was proper because he included in the gross estate the trust fund which stood for its payment. When the trust fund was excluded by my decision on appeal, the elimination of the deduction was necessarily required, both as a matter of mathematics and of law. The exemption of the *inter vivos* fund and the deduction of the value of the annuity were inseparable. If the trust fund was excluded but the deduction was allowed to stand, the simple arithmetical result would be that the deduction would be twice allowed and the State thereby unjustly deprived of the tax due it.

Apart from any question of figures, the law required the elimination of the deduction. Under subdivision 1 of section 249-s of the Tax Law, deductions for claims against the estate are limited to the extent that they are " contracted bona fide and for an adequate and full consideration in money or money's worth ". The executor insists that the decisive agreement is that between the decedent and Bruce executed on January 7, 1928. The only consideration expressed in that agreement is

set forth in this language: "Whereas said party of the first part desires the party of the second part (Bruce) to execute said agreement (the separation agreement) with his wife, and *in consideration thereof* has agreed to meet the amount of said payments of principal and income required by said agreement, and has agreed to leave to the party of the second part by her last will and testament at least one half of her estate &ast; &ast; &ast;."

The agreement can be read from beginning to end without finding in it even a promise by Bruce to do anything in return for the generous benefits the agreement assures him. If the executor were held to its insistence that this agreement is decisive, the case would end here. When faced with the total lack of consideration in the agreement, the executor shifted its position and next argued that consideration could be found in Bruce's subsequent entering into the separation agreement. This does not advance the executor's position for the statute requires a consideration that can be measured "in money or money's worth." Obviously, Bruce's entrance into the separation agreement cannot be so measured. The alleged consideration is, therefore, under the express terms of the Tax Law, worthless and wholly ineffective. (*Matter of Seitz*, 262 N. Y. 32; *Conner* v. *Bender*, 125 F. 2d 796; *Glascock* v. *Commissioner of Internal Revenue*, 104 F. 2d 475; *Matter of Benneche*, 160 Misc. 153.)

Driven from this position, the executor finally contended that consideration for the mother's promise could be found in her hope and belief that she would reap a financial benefit if the deal for the Falconer properties was consummated. This may have furnished a profit motive but it was incidental and not the consideration required by the Tax Law. (*Matter of Whittier*, 256 App. Div. 377, 380, 381, affd. 282 N. Y. 613; *Matter of John C. Stephan*, 121 Misc. 596.)

Even if it were conceded that the claim is valid and enforcible against all of the assets of the testatrix, the executor still would not be helped. Since the claim is not a deductible claim within the meaning of the statute, its validity is of no importance. "It is not essential to the validity of an estate tax that all claims which may be enforced against the property should be deducted before making the calculation" (*Meyer's Estate* v. *Commissioner of Internal Revenue*, 110 F. 2d 367, 368, certiorari denied 310 U. S. 651, citing *Taft* v. *Commissioner*, 304 U. S. 351, and *Empire Trust Co.* v. *Commissioner of Internal Revenue*, 94 F. 2d 307).

The contention that the court did not have jurisdiction to eliminate the deduction because the State Tax Commission did not appeal is also without merit. Section 249-x of the Tax Law provides that a party who is " dissatisfied " may appeal to the Surrogate. (*Matter of Kane,* 246 N. Y. 498, 505.) The Tax Commission was not dissatisfied. Although the deduction had been allowed, the appraiser had included in the gross estate the trust fund which was subject to the payment of the annuity. There was, therefore, no basis for any appeal by the Commission. As I have pointed out, the question of the exclusion of the trust corpus and the question of the deduction were inseparable and so dependent one upon the other that the one could not be decided without involving the other. The proper disposition of the appeal required a consideration of the question and no appeal by the State Tax Commission was necessary to bring it before the court. (*Matter of Parker,* N. Y. L. J., Dec. 6, 1937, p. 2018, col. 3; citing *Matter of Westurn,* 152 N. Y. 93, and *Matter of Kiernan,* 134 Misc. 868. affd. 227 App. Div. 782; see, *Matter of Thompson,* 57 App. Div. 317.)

Submit order on notice accordingly denying the application to modify the prior decision.