In the Matter of the Accounting of MARY E. EBDON, as Administratrix of the Estate of THOMAS H. EBDON, Deceased.

Surrogate's Court, Jefferson County, July 11, 1950.

*Lawrence Conboy* for administratrix.

*Paul K. Porter*, special guardian for infants, respondents.

WRIGHT, S. The decedent died intestate, leaving his widow and four minor children. The question here raised is whether the personal property on the farm passed to the widow as surviving joint tenant or whether it became a part of the decedent's estate.

By deed dated November 5, 1945, the farm was conveyed to decedent and his wife as tenants by the entirety. Although the sale of the farm involved seventeen cows, two horses, five yearlings, five calves and numerous farm implements, no bill of sale for this personal property was given. The absence of a bill of sale is explained by the fact that the parties did not have a list of the personal property with them when they went to the office of the lawyer who prepared the deed. However, certain evidence concerning the intention of the parties has been produced.

One Grinter, now deceased, financed the entire purchase price by loaning $8,500. As security for the loan, the decedent and his wife gave Grinter a mortgage on the real estate, and also a chattel mortgage on the personalty on the farm, which recites: "we, Thomas H. Ebdon and Mary E. Ebdon, his wife, * * * are indebted unto William J. Grinter * * * in the sum of Eighty-five hundred dollars * * * being for collateral security for the payment of a certain mortgage, according to the terms thereof between Thomas H. Ebdon and Mary E. Ebdon, his wife, mortgagors, and William J. Grinter, mortgagee, dated November 5, 1945, * * * And we do represent and warrant that we are the true and lawful owners and have the right to mortgage, sell and transfer the same, and that the same are free and clear from any and all liens, claims and incumbrances thereon; and that the same are now in possession at our farm in the town of Ellisburg, Jefferson County, N. Y."

Blanch G. Eastman, who sold the farm and personal property, testified that the real and personal property constituting the farm was sold as an entity; that the decedent during negotiations and transfer said that Mrs. Ebdon always helped him and that if anything happened to him he wanted Mrs. Ebdon to have the personal as well as the real property.

Every estate granted or devised to two or more persons in their own right shall be a tenancy in common, unless expressly declared to be a joint tenancy. (Real Property Law, § 66.) While in this State there is no such thing as an estate by the entirety in personal property, there may be a joint ownership analogous thereto, at least so far as survivorship is concerned. (*Matter of Blumenthal*, 236 N. Y. 448, 453; *Scutella* v. *County*

*Fire Ins. Co.,* 231 App. Div. 343, 346.) This section applies to personal as well as real property. (*Matter of Kimberly,* 150 N. Y. 90.) It is not necessary that the words " joint tenancy " be used to create an estate of that character. (*Overheiser* v. *Lackey,* 207 N. Y. 229, 232.)

I find that it was the intention to create a joint tenancy of the personal property and that the estate granted was expressly declared to be a joint tenancy. As to so much of such personal property so purchased and remained upon the decedent's death the widow became the sole owner.

The very nature of dairy farming creates another and more difficult problem. Between the time of purchase of the dairy and the time of decedent's death there was a natural increase in the livestock. That is, the cows owned jointly by Mr. and Mrs. Ebdon produced calves. As to such young stock which was a part of the dairy at the time of decedent's death, does it go to Mrs. Ebdon as surviving joint tenant or should it go to decedent's distributees?

The question is this: does the natural increase of a jointly owned cow become jointly owned property and become the sole property of the survivor of the joint tenants? My attention has been directed to no authority on this subject, nor do I find any authority exactly in point.

The general rule is that offspring or increase of domestic animals belongs to the owner of the dam. (2 Am. Jur., Animals, § 15.) Blackstone discusses the subject in this language: " Of all tame and domestic animals, the brood belongs to the owner of the dam or mother; the English law agreeing with the civil, that ' *partus sequitur ventrem* ' in the brute creation * * *. And therefore in the laws of England, as well as Rome, ' *si equam meam equus tuus praegnantem fecerit, non est tuum sed meum quod natum est.*' And for this Puffendorf gives a sensible reason; not only because the male is frequently unknown; but also because the dam, during the time of her pregnancy, is almost useless to the proprietor, and must be maintained with greater expense and care; wherefore, as her owner is the loser by her pregnancy, he ought to be the gainer by her brood." (2 Blackstone's Comm., pp. 390, 391.)

Of the four unities necessary to constitute a joint tenancy, there can be no question here as to unity of interest, time and possession. What of the unity of title? The joint estate must be created by one and the same act. Here the acquisition was by the natural act of birth. Discussing title in the natural

increase of cattle Blackstone says: " The doctrine of property arising from *accession* is also grounded on the right of occupancy. By the Roman law, if any given corporeal substance received afterward an accession by natural or artificial means, as by * * * the pregnancy of animals * * * the original owner of the thing was entitled by his right of possession to the property of it under such its state of improvement * * *. And these doctrines are implicitly copied and adopted by our Bracton, and have since been confirmed by many resolutions of the courts." (2 Blackstone's Comm., p. 404.)

While the cow was carrying the calf, the latter was a part of the jointly owned cow. At some arbitrary and exact point in the natural process of calving, did there come some change in the nature of ownership in the calf? Since the calf came into being as a part of the jointly owned cow, it would appear that the nature of ownership must continue after birth. A joint tenancy may be terminated by severance through an act of the owner. Since the act of birth was an act of nature no severance of the joint tenancy occurred.

As to that part of the dairy originally on the farm and as to that part raised from those cows, the widow is entitled to them as surviving joint tenant. As to any cows added to the dairy by purchase, a joint tenancy has not been established and the proceeds from their sale will be distributed as a part of the estate.

The final decree will provide accordingly.