S. Samuel Di Falco, S.
The accounting administratrix c. t. a. is the widow of the testator. Objections to her account have been filed by the former wife of the testator in her status as a creditor, by his son who is a legatee under the will and is also beneficiary under insurance policies, and by a number of creditors. The assets reported in the account aggregate $3,478 in value. The claims filed by creditors are greatly in excess of the assets available to pay them. All of the objections raise certain common issues, and the court will deal with these issues before taking up the specific objections.
(1) The accounting party is charged with failure to account for the decedent’s interest in a co-operative apartment. Documentary evidence proves that the testator and his wife, the accounting party, executed an agreement to purchase 320 shares of the capital stock of Park-58 Corporation and to take an assignment of the proprietary lease of an apartment therein. The shares of stock were thereafter issued in the names “ Kurt Schlesinger and Helen Schlesinger ”. The lease was assigned to the testator and his wife in the same form as the shares of stock. Neither the lease nor the shares of stock describe the nature of the tenancy as between the testator and his wife.
An interest in a co-operative apartment is classed as personal property. (Matter of Miller, 205 Misc. 770.) Section 66 of the *812 Real Property Law declares that every estate granted to two' or more persons in their own right 1 ‘ shall be a tenancy in common, unless expressly declared in joint tenancy ”. It has been held that section 66 applies to personal property, as well as real property. (Matter of Kimberly, 150 N. Y. 90, 93; Matter of Ebdon, 198 Misc. 531, 533.) However, this section has been held to be subject to the exception that where the persons in whose names the property is taken are husband and wife and where the consideration for the property is derived solely from the husband, it is presumed that the husband intended to give his wife only a right of survivorship. (N. Y. Legis. Doc., 1959, No. 60, p. 3; Matter of Polizzo, 308 N. Y. 517, 521, 524; Matter of Kane, 246 N. Y. 498, 504; Sanford v. Sanford, 45 N. Y. 723, 726; West v. McCullough, 123 App. Div. 846, affd. 194 N. Y. 518; Matter of Kaupper, 141 App. Div. 54, 57.). The Law Revision Commission in its study referred to section 66 of the Real Property Law and the sections of the Banking Law relating to joint accounts and said: “ All these rules are subject to an exception, however, where the persons in whose names the property * * * is held are husband and wife, and either the property so held or the consideration for it * * * derived from the husband. * * * In cases where the husband or a third party at his instance transfers property to the husband and wife, it is presumed (unless a different intention is shown) that the husband intended to give to his wife only a right of survivorship, and this intention, also, is given effect. Where the presumption is applied, therefore, the wife acquires a right of survivorship in a bank account, even though the account is not in statutory form, and she acquires a right of survivorship in property transferred to her and her husband even though no words of survivorship or other language indicating a joint tenancy are used.” (N. Y. Legis. Doc., 1959, No. 65, p. 3.)
This presumption, which has long been part of the law of New York, has been changed by legislative enactment. (L. 1959, ch. 580; Domestic Relations Law, § 56-a.) The statute provides, however, that it “ shall not affect any interest or right of survivorship created before the date when it takes effect.” It became effective April 20, 1959. This decedent died December 18, 1956, and the right of survivorship had ripened into full ownership before the new statute was enacted.
On cross-examination, the administratrix stated that her husband’s funds exclusively were used to pay for the co-operative apartment. There is no evidence of actual intent other than the documentary evidence and the testimony of the admin *813 istratrix. The court, therefore, finds that the widow was the owner of the co-operative apartment and that it constitutes no part of the assets of this estate.
(2) Most of the objections allege that the administratrix failed to report various articles of personal property which were in the apartment occupied by the decedent and allegedly were owned by him at the time of his death. The burden of establishing that the decedent owned assets in addition to those reported in the account, rests upon those asserting such fact. The objectant Ivonne Schlesinger introduced a bill of sale of furniture and furnishings to “ Mr. and Mrs. Kurt Schlesinger ”. An inventory of the contents of the apartment indicates that some of the items on the bill of sale remained in the apartment until the decedent’s death. The administratrix testified on cross-examination that her husband’s money was used to pay for these items.
It will be noted that the bill of sale would tend to show a joint ownership rather than ownership in the decedent. Regardless of that fact, however, the evidence satisfies the court that the decedent had given to his wife full and complete ownership of the furniture and furnishings and that none of such articles is an asset of this estate. The court also finds that the collection of Chinese porcelains was owned by the widow. The decedent did purchase some of the articles but he gave his entire interest in the collection to his wife, the administratrix.
There was considerable testimony and discussion of paintings that were at one time or another in the decedent’s apartment. The objectant Ivonne Schlesinger introduced in evidence bills of sale to the decedent of the following paintings: Portrait of a Girl, Edzard; Portrait of a Lady, Lenbach; Boatman on the Lake, Corot; The White Monk, Wilson. In addition, the administratrix testified on cross-examination that the decedent’s funds were used in the purchase of a painting entitled, Landscape in Southern France, by Matisse, a sketch and a small painting by Renoir and a small painting by Utrillo. It would appear that the Lenbach painting in the bill of sale was exchanged for another painting. There is no evidence respecting the Wilson painting or its disposition.
The evidence clearly establishes that the paintings by Matisse, Renoir and Utrillo were given by the decedent to his wife. The first two of these paintings were sold by the wife during her husband’s lifetime and the proceeds were used to pay bills. The decedent had been in ill health and was judicially declared incompetent to manage his affairs on December 18, 1956. Inasmuch as the paintings sold were the property of Mrs, Schlesinger, *814 no part of the proceeds of sale are part of the assets of this estate. The Utrillo painting belongs to Mrs. Schlesinger. The evidence satisfies the court that the Corot and Edzard paintings were also the subject of gift by the decedent to his wife during his lifetime.
It appears that a coin collection was sold by the wife for $325 during the decedent’s lifetime. The proceeds, she claims, were used to defray expenses during the decedent’s illness. Moreover, it appears that the decedent was paid one month’s salary during his illness, and that these moneys were used by the widow to meet their expenses. The administratrix has never been requested to account for financial transactions with the decedent during his lifetime. There is no evidence of her total receipts and total disbursements during his lifetime, and there is no basis on the present record for directing any surcharge against the widow with respect to the proceeds of the coin collection or the decedent’s salary payments. It appears that a painting by Andre is still in the apartment that was formerly occupied by the decedent and his wife. However, this record does not contain sufficient evidence to justify the court in making any finding as to the ownership of this painting. The objectants did not establish that it was owned by the decedent.
(3) The widow of the decedent was the beneficiary under a policy of insurance on the life of the decedent. The policy was pledged as security for a note due the National State Bank of Elizabeth. There does not seem to be any question that the decedent was the maker of that note. The proceeds of the policy were collected by the bank and to the extent of $12,000 applied on the note. The widow claims to be entitled to reimbursement in the sum of $12,000. There has been no denial of the allegations of the account. (See Surrogate’s Ct. Act, § 76.) Her right of subrogation is clearly established by the authorities. (Walzer v. Walzer, 3 N Y 2d 8 and cases cited.)
Against the background of these determinations, the court makes the following rulings on the objections filed by the respondents:
The objections of Ivonne Schlesinger are not numbered. The court has numbered the separate paragraphs of four pages of objections and the rulings refer to the objections as so numbered. The first objection is sustained. The claim is listed in the account in the total sum of $19,766.69 without any specifications as to principal and interest. At the hearing it appeared that the decedent’s liability was $766.67 a month and that the decedent paid only $5,600.01 in 1955 and $766.67 in 1956. It *815 also appears that the decedent was obligated to the objectant on a promissory note in the sum of $6,500. It also was established that the decedent had borrowed $1,000 from the objectant. The total principal claim would aggregate $19,533.40, and is allowed in that amount.
The second objection is overruled; the third objection is sustained. The fourth objection is overruled. It is addressed to a claim which appears in the account to have been allowed by the administratrix. The burden of proof is upon the objectant (Surrogate’s Ct. Act, § 210), and no other proof has been offered by the objectant. The fifth objection raises no issue because the claim to which it is addressed has been rejected by the administratrix. The sixth objection is addressed to the valuation listed in the account for certain jewelry which was specifically bequeathed to the son of the testator. The articles are still in the hands of the administratrix and the inventory value at which they are carried does not in any way prejudice the right of this objectant. The seventh objection is overruled. The eighth objection is overruled. Insofar as it is addressed to the failure to include in the account alleged assets which are discussed hereinabove, it is overruled for the reasons stated hereinabove. Insofar as the objection is addressed to any other alleged assets, it is dismissed for failure of proof. The ninth objection is overruled. The tenth objection is overruled. The eleventh objection is overruled for failure of proof. The twelfth objection raises no triable issue at the present time. The thirteenth objection raises no issue with respect to the present account. The fourteenth objection raises no triable issue. The fifteenth objection raises an issue which has heretofore been ruled upon by the court.
The objections of Henry Schlesinger are disposed of as follows: The first objection raises no issue at the present time. If the objectant is entitled to payment of the specific legacy, the values stated in the account will be unimportant. If during the further administration of this estate it appears necessary to sell the property to pay obligations of the decedent, the present inventory value of the assets will not be determinative of the fair market value of the items. The second objection requires no ruling at this time. The third, fourth and fifth objections have been settled by the agreement entered into by the objectant and the other parties respecting the distribution of the proceeds of the insurance policies. Insofar as the sixth objection charges the administratrix with other jewelry than that listed in the account, it is overruled for failure of proof. *816 Insofar as it questions the valuation of the jewelry on hand it requires no determination at this time. The seventh and eighth objections are overruled.
The objections of the Presbyterian Hospital in the City of New York are disposed of as follows: The first objection is overruled. Insofar as the second objection is addressed to the items of property discussed hereinabove, it is overruled for the reasons therein stated. Insofar as it is addressed to other articles it is overruled for failure of proof. The third objection is overruled for failure of proof.
The first, third and fourth objections of Leonard Hook are overruled for the reasons stated hereinabove. The second and fifth objections are dismissed for failure of proof. The sixth and seventh objections present no issue.
The objections of Dr. Joseph Moldaver raise only questions that have been passed upon in the other objections. No separate proof was offered in support of these objections and the same rulings are made as were made on the identical objections interposed by others.
The objections of Maurice Shorenstein were disposed of by the stipulation entered upon the record.
The accounting administratrix has listed certain claims in schedule D-2. Some of these claims are not personal debts or claims within the meaning of section 212, Surrogate’s Court Act, because they are based upon disbursements made by the administratrix for funeral and administration expenses after the death of the testator. The claim for reimbursement in the sum of $12,000 based upon the insurance policy under which she was beneficiary, has been ruled upon hereinabove. The claim in the sum of $733.14 was allowed by order of the Supreme Court dated December 18, 1956 and entered December 26, 1956 and is established as a valid claim against this estate. The item of $75 was for funeral expenses of the decedent and the item of $115 is for the premium on the surety bond of the administratrix c. t. a. In the absence of objection to these items, they are allowed. No proof was offered in support of the claim for $123.46 and it is not allowed. Schedule D lists a claim for $2,500 based upon a note which was conceded to be barred by the Statute of Limitations as an affirmative claim. It is disallowed.
The petition requests judicial approval of a compromise of litigation involving life insurance proceeds. It was represented to the court that none of the policies is payable to the estate and that the estate has no interest in any of them. Some of the objectants did assert an interest on behalf of the estate, but no proof was offered in support of such objections. The differences *817 between the claimants have been resolved by stipulation. Inasmuch as the proceeds do not involve estate assets, judicial approval of the stipulation of settlement is not required in this proceeding.
Submit decree on notice settling account accordingly.